**Rene Segura VARGAS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 96–288.

Supreme Court of Wyoming.

July 29, 1998.

Rehearing Denied Aug. 26, 1998.

Sylvia L. Hackl, State Public Defender; Donna Domonkos, Appellate Counsel; and Diane M. Lozano, Assistant Appellate Counsel, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Assistant Attorney General Appellee (Plaintiff).

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

Appellant, Rene Segura Vargas (Vargas), appeals his conviction on two counts of conspiracy to deliver a controlled substance, one count of possession of a controlled substance with intent to deliver, and one count of causing serious bodily injury to a peace officer in the performance of his duty. Finding sufficient evidence to support the conviction, no violation of Vargas' constitutional rights, and no abuse of discretion in the denial of his

* Chief Justice at time of conference.

motion to sever the counts for trial, we affirm.

## I. ISSUES

Vargas presents four issues:

*ISSUE I*

Whether the appellant was denied his constitutional right to a fair trial when he was denied his right to counsel as guaranteed by the Sixth and the Fourteenth Amendments of the United States Constitution and Article I § 10 of the Wyoming Constitution.

*ISSUE II*

Whether the district court abused its discretion when it denied the appellant's motion to sever the charges against him.

*ISSUE III*

Whether there was insufficient evidence to convict the appellant of Count II of the Information, possession with intent to deliver and of Count III of the Information, conspiracy to deliver a controlled substance.

*ISSUE IV*

Whether the appellant was denied his constitutional right to a speedy trial.

The State of Wyoming phrases the issues in the following manner:

I. Whether the district court abused its discretion in denying appellant's request for substitute counsel.

II. Whether the district court abused its discretion in denying appellant's motion for severance.

III. Whether there was sufficient evidence to convict appellant on Count II and Count III.

IV. Whether appellant was denied his constitutional right to a speedy trial.

## II. FACTS

On April 5, 1995, a four-count information was filed against Vargas alleging two counts of conspiracy to commit delivery of a controlled substance, one count of possession of a controlled substance with intent to deliver, and one count of causing serious bodily injury to a peace officer in the performance of his duty. Counts I and III, the conspiracy charges, involved packages of marijuana Vargas received from unknown individuals in Texas. Count II was based on marijuana found packaged for delivery inside Vargas' car. The car had been abandoned by Vargas, impounded by police, and searched. The fourth count was for injuries inflicted upon a police officer at the time of Vargas' arrest.

Vargas' court appointed attorney requested a psychiatric evaluation to determine whether his client was mentally competent to stand trial. That attorney subsequently withdrew, at Vargas' request, and was replaced with another attorney. Counsel filed a demand for speedy trial and a motion for recusal of the county court judge who would hold the preliminary hearing.

On June 30, 1995, the county court entered its order finding Vargas competent to stand trial. The county court also denied the motion for recusal, held a preliminary hearing, and bound Vargas over to district court. Arraignment was set for July 21, 1995, but was continued at Vargas' request to August 25, 1995. Vargas filed a peremptory challenge to the district court judge, an objection to the preliminary hearing, and a motion to sever the counts for trial. The arraignment was held on August 25, 1995, and the case was assigned to a different district court judge on September 1, 1995.

A hearing on Vargas' motions was scheduled for October 26, 1995, and the trial was set for November 14, 1995. Because of illness suffered by the district court judge, the motion hearing could not be held as scheduled and was moved to the morning of trial. Vargas sought and received a continuance of the trial setting so he could adjust his trial preparation according to the district court's rulings on his motions.

The motion hearing was held on November 14, 1995. The district court ruled that Vargas' preliminary hearing was defective and gave Vargas the option of waiving the defect and continuing to trial as planned or returning the matter to county court for a new preliminary hearing. Vargas chose a new preliminary hearing.

The case was returned to county court. Following an unsuccessful motion for recusal of the county court judge, a second preliminary hearing was held on January 4, 1996. The case was again bound over to district court. Vargas again challenged the district court judge and, following a second arraignment on January 12, 1996, the case was reassigned to the same district court judge who had previously been assigned.

Trial was scheduled for March 25, 1996. Vargas filed a motion to dismiss for lack of a speedy trial, and a motion hearing was held on February 23, 1996. The speedy trial motion was denied and the motion to sever the four counts for trial was taken under advisement. A few days later, that motion was also denied.

Trial began as scheduled on March 25, 1996. On the morning of the second day of trial, Vargas informed the district court he was not happy with his attorney's performance and wanted a different attorney. Vargas was allowed to put his complaints on the record, which included the defects in his first preliminary hearing, the denial of his speedy trial motion, and his attorney's failure to subpoena witnesses. Vargas requested a continuance so he could find an attorney who would represent him in the manner he desired.

The district court denied Vargas' requests, explaining that his constitutional right to an attorney did not include the right to an attorney of his choice. The district court indicated it found Vargas' counsel to be highly competent, and Vargas agreed that his attorney was not incompetent, only that he was not conducting the trial as Vargas wished. Because Vargas already had able counsel and the trial was in its second day, the district court gave him the option of continuing with his current attorney or proceeding pro se. Vargas chose to proceed with current counsel.

Later that same day, Vargas again requested new counsel because he believed his attorney was unethical and unprofessional and was conspiring with the State to effect his conviction. Again, the district court explained Vargas' right to counsel, and denied the request. Vargas was given the same

option of either continuing with current counsel or proceeding pro se. When Vargas refused to allow his attorney to proceed, the district court ruled that Vargas had waived his right to counsel, giving Vargas a recess in which to reconsider. After the recess, the district court explained to Vargas that he had the right to proceed pro se or with counsel, but he was not entitled to change counsel at this juncture. The district court also explained that should he proceed on his own, Vargas would be held to the same rules as an attorney and the district court could not assist him. Vargas' attorney was appointed as stand-by counsel. The district court explained the limitations of that role to Vargas. In unequivocal terms, the district court told Vargas that it recommended against his proceeding without counsel and asked whether Vargas understood. He responded, "Yes, Your Honor."

Vargas also stated he did not want to represent himself. He realized his limitations and understood he was not capable of handling his defense. Vargas stated his fear that he would not receive a fair trial without an attorney. However, because he refused to accept the services of the admittedly capable attorney already appointed, the district court required Vargas to proceed with only stand-by counsel.

For the remainder of the trial, Vargas continued to request the appointment of new counsel who would comply with his requests, and stated numerous times he was not capable of representing himself. Later in the proceedings, Vargas' appointed attorney was allowed to put on the record his reasons for the tactical decisions he had made. Although he put on no evidence as a defense, Vargas did make a closing argument to the jury complaining about his lack of counsel and telling them his defense theories. Guilty verdicts were returned on all four counts.

### III. STANDARD OF REVIEW

The parties present a conflict in the standard of review to be applied to our determination of the first issue. Vargas claims *de novo* review of his constitutional right to counsel is appropriate. The State phrases

the issue as one of denial of a motion to substitute counsel, making abuse of discretion the appropriate standard of review.

The State cites *Irvin v. State*, 584 P.2d 1068 (Wyo.1978) as support for its position. In *Irvin*, defense counsel filed a motion to withdraw and for substitute counsel several days prior to trial. That motion was denied. On the morning of trial, Irvin presented a petition to proceed pro se, which was granted. Irvin appealed the trial court's denial of his motion for substitute counsel, and we reviewed that denial for abuse of discretion. *Id.* at 1071–72. The case before us is distinguishable from *Irvin*, in that Vargas' request for substitute counsel did not include a request to proceed pro se if substitute counsel was denied. Vargas' refusal to choose between proceeding with appointed counsel or proceeding without counsel presents a different circumstance with different constitutional implications from that before us in *Irvin.*

Recent decisions from the Tenth Circuit Court of Appeals consider factual circumstances similar to those in the instant case under a *de novo* standard of review. *See, e.g., United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir.1997) and *United States v. Burson*, 952 F.2d 1196, 1199 (10th Cir.1991), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992). *See also United States v. Dawes*, 874 F.2d 746, 748 (10th Cir.), *cert. denied*, 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989) and *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir.1987). Because of the constitutional implications present when a defendant is forced to proceed pro se after he refuses to accept the services of appointed counsel, we will apply the *de novo* standard of review to Vargas' first issue.[1]

 As to Vargas' second issue, W.R.Cr.P. 14 provides that the district court "may order * * * separate trials of counts * * * *" joined together in a single information. Because the language in this rule is permissive, we review denial of a motion to sever under our " 'traditional abuse-of-discre-

tion standards.' " *Black v. State*, 869 P.2d 1137, 1139 (Wyo.1994) (*quoting Ostrowski v. State*, 665 P.2d 471, 484 (Wyo.1983)). In reviewing judicial discretion, "we consider whether the district court could have reasonably decided as it did." *Black*, 869 P.2d at 1139.

 When reviewing sufficiency of evidence issues, this court assesses whether all the evidence presented forms an adequate basis for a reasonable inference of guilt beyond a reasonable doubt, when that evidence is viewed in the light most favorable to the state. We will not substitute our judgment for that of the jury; our only duty is to determine whether a quorum of reasonable and rational individuals could have come to the same result as the jury actually did. *Martinez v. State*, 943 P.2d 1178, 1182 (Wyo. 1997) (*quoting Bloomquist v. State*, 914 P.2d 812, 823–24 (Wyo.1996)).

 Finally, Wyoming protects a defendant's constitutional right to speedy trial via W.R.Cr.P. 48. This court performs a *de novo* review of a conviction to ensure that the mandates of W.R.Cr.P. 48 and the constitutional guarantee of a speedy trial have been met. *Yung v. State*, 906 P.2d 1028, 1032 (Wyo.1995).

## IV. DISCUSSION

### A. Right to Counsel

Vargas asserts he was denied his Sixth Amendment right to be represented by counsel when the district court refused to appoint substitute counsel during trial. He argues he never waived his right to counsel, that he should be entitled to the attorney of his choice, and he was forced to stand trial without an attorney in violation of his constitutional rights.

 A criminal defendant may waive his right to counsel so long as the district court ensures that it is " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Van Riper v. State*, 882 P.2d

---

1. A determination as to whether abuse of discretion continues to be the appropriate standard of review in cases factually similar to *Irvin* is left for a more appropriate case. *See United States v.* *Reddeck*, 22 F.3d 1504, 1511 (10th Cir.1994) and *United States v. Johnson*, 961 F.2d 1488, 1490 (10th Cir.1992).

230, 234 (Wyo.1994) (*quoting United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied,* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992)). It is the district court's responsibility to inquire into the defendant's understanding of the charges against him, the allowable punishments, possible defenses, and the risks of proceeding pro se. *Van Riper,* 882 P.2d at 234 (*quoting Willie,* 941 F.2d at 1388).

The precise issue before us is whether a criminal defendant who insists upon his right to be represented by counsel waives that right by refusing, at trial, to accept the services of the attorney appointed to represent him. This is a question not previously decided by this court.

■ We will conduct two distinct inquiries: first, whether Vargas voluntarily waived the right; and second, whether the right was knowingly and intelligently waived. *Taylor,* 113 F.3d at 1140. When a defendant is given a clear choice between waiver of counsel and retention of present counsel, the choice is voluntary so long as defendant's refusal to proceed with able appointed counsel is without good cause. *Id. See also Padilla,* 819 F.2d at 955. Waiver of counsel is knowing and intelligent where the record establishes that the defendant had a sense of the magnitude of the undertaking and the risks inherent in proceeding pro se. *Taylor,* 113 F.3d at 1140–41; *Padilla,* 819 F.2d at 956. Review of the record leaves no doubt that Vargas' conduct constitutes a voluntary, knowing, and intelligent waiver of his Sixth Amendment right to be represented by counsel.

Each time Vargas sought substitute counsel, the district court allowed him to make a record of his dissatisfaction with his current attorney. The district court found that appointed counsel was competent and had performed well, and Vargas agreed. He simply wanted an attorney who would follow his instructions. Although the district court informed him he had no right to counsel of his choice, Vargas persisted.

■ The Sixth Amendment gives a criminal defendant the right to the assistance of competent counsel. *Strickland v. Washington,* 466 U.S. 668, 684–85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Jackson v. State,* 902 P.2d 1292, 1295 (Wyo.1995). There is, however, no right to counsel of defendant's choice nor a right to counsel who will blindly follow defendant's instructions. *Padilla,* 819 F.2d at 956. The district court's determination that appointed counsel was able is supported by the record and not disputed by Vargas. Accordingly, by refusing to proceed with appointed counsel, Vargas voluntarily waived his right to counsel.

■ The record also demonstrates that Vargas knowingly and intelligently waived counsel. Consistent with federal law, we have stated that the district court should conduct an inquiry on the record into the defendant's understanding of the magnitude of his undertaking before a waiver of right to counsel is permitted. *Van Riper,* 882 P.2d at 234; *Padilla,* 819 F.2d at 956–57. Here, Vargas was arraigned twice, both times signifying an understanding of the charges against him, the range of available punishments, and the possible defenses. In addition, he was appropriately questioned and admonished by the district court before being allowed to proceed pro se. When it became apparent *at trial* that Vargas would not continue with appointed counsel as his representative, the district court informed him of the risks he faced if he proceeded without counsel. Vargas stated he understood the risks. In the face of the district court's admonitions that Vargas was not entitled to counsel of his choice, and his own admissions that he was unable to conduct his trial himself, Vargas' steadfast refusal to accept the assistance of competent appointed counsel can only be considered a measured attempt to inject error. The choice given to Vargas of proceeding with appointed counsel or proceeding without an attorney was appropriate and correct. Accordingly, we find that Vargas voluntarily, knowingly and intelligently waived his right to counsel.

## B. Denial of Vargas' Motion to Sever

■ Vargas does not contend that joinder of the four counts on a single information was improper or prejudicial, only that the four counts should not have been tried to-

gether. W.R.Cr.P. 14 provides the standard for severance:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses * * *, the court may order an election or separate trials of counts * * * or provide whatever other relief justice requires.

 It is the moving party's burden to prove that prejudice will result from joinder of offenses. *Dobbins v. State,* 483 P.2d 255, 259 (Wyo.1971); *see also Keene v. State,* 835 P.2d 341, 347 (Wyo.1992). On appeal, it is incumbent upon Vargas to show that the finding was an abuse of discretion. This necessarily requires a showing that actual prejudice resulted from the trial. *Pote v. State,* 695 P.2d 617, 624 (Wyo.1985); *Tabor v. State,* 616 P.2d 1282, 1285 (Wyo.1980). Vargas' conclusory pleading to the district court, and reiteration thereof on appeal, failed to show prejudice or abuse of discretion.

In addition, before the trial began, the district court properly instructed the jury on the need to keep the evidence on each count separated. Jurors were allowed to take notes to assist with this task. Although Vargas places little faith in the jury's ability to follow this instruction, we presume the opposite. *Dobbins,* 483 P.2d at 259. Vargas has failed to show that the district court's denial of his motion to sever was an abuse of judicial discretion.

### C. Sufficiency of the Evidence

Vargas complains there was insufficient evidence for the jury to convict him of Count II, possession of marijuana with intent to deliver, and Count III, conspiracy to deliver a controlled substance, arguing only that the testimony of the critical witnesses to each count was not credible.

 With respect to Count II, one of the State's witnesses was a passenger who was standing outside the abandoned car when police arrived. His testimony was that the vehicle belonged to Vargas and that Vargas had fled when he saw the officers approaching. Vargas argues that the testimony of this passenger should be discredited because it came from "a convicted dope dealer" who was recently discharged from prison after serving a sentence on a drug related charge. Vargas believes that, without this testimony, there was no evidence that the abandoned vehicle belonged to him and, thus, no evidence he was ever in possession of the marijuana. This argument ignores entirely the testimony of the person who sold him the car and other physical evidence which corroborated his ownership of the vehicle and his use of it that night.

 As to Count III, the evidence showed that Vargas had enticed a teenaged girl to accept a package for him at her home. After a narcotics dog was alerted to the package, it was held by police officers in Mission, Texas, and then "delivered" by a DCI agent to the teenager's address. She told the officer, and stated at trial, that the package belonged to Vargas. In his appeal, Vargas argues that the "testimony of a substance abusing, troubled teenager should never suffice to convict a man and deprive him of his liberty." Once again, he ignores the corroborating testimony from the police officers and the minor's mother.

 It is not this court's responsibility to pass on the credibility of witnesses. We leave to the jury the role of evaluating and weighing witnesses' credibility. *Taul v. State,* 862 P.2d 649, 657 (Wyo.1993) (*quoting Springfield v. State,* 860 P.2d 435, 449 (Wyo. 1993)). The passenger admitted his prison record and the reasons for his incarceration to the jury. The minor admitted her drug use and other emotional and social problems. We assume the jury duly considered this testimony and gave it the weight to which it was entitled. *Kelly v. State,* 694 P.2d 126, 130 (Wyo.1985).

All of the evidence, taken together, was sufficient for a reasonable jury to conclude that Vargas committed the crimes with which he was charged.

### D. Speedy Trial

 Vargas' final argument is that he was denied his constitutional right to a speedy trial because nearly one year passed between the time he was arrested and the time of his trial. He asserts that the delay attributable to the county court's initial fail-

ure to comply with W.R.Cr.P. 21.1 caused a violation of his right to a speedy trial. We disagree.

Our analysis begins with consideration of the procedural mechanism found in W.R.Cr.P. 48. *Yung,* 906 P.2d at 1032. Vargas does not argue that this rule was violated, and the record reflects that trial was held within 120 days of arraignment. Accordingly, we turn to the four-part test articulated by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and adopted by this court in *Cosco v. State,* 503 P.2d 1403, 1405 (Wyo.1972), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). This test requires us to consider: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See Yung,* 906 P.2d at 1032.

The length of the delay is easily calculated: 354 days from arrest to trial. The parties agree that this delay is not presumptively prejudicial, but is long enough to require further analysis. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182 and *Yung,* 906 P.2d at 1032. There is no doubt that Vargas asserted his right to a speedy trial both by filing a demand for speedy trial early in the process and later filing a motion to dismiss for lack of a speedy trial. Vargas presents only conclusory allegations of prejudice; primarily asserting pretrial anxiety even though he was incarcerated on a different crime while awaiting this trial. The only cogent argument Vargas makes is with respect to the second prong of the *Barker* test, essentially that the county court is responsible for the delay of his trial, and therefore the case should have been dismissed.

While focusing on his problems with his preliminary hearing, Vargas ignores the delays caused by his own pretrial practice. Vargas filed three motions for recusal of the judges assigned to his case. He also requested a psychiatric evaluation, changed attorneys, and sought numerous continuances of settings. All totaled, 162 days of the time between arrest and trial are attributable directly to these actions by Vargas. The delay attributable to the county court's mishan-

dling of Vargas' W.R.Cr.P. 21.1 motion is minor in comparison. In addition, Vargas filed numerous motions which required hearings before the district court and time for careful deliberation before rulings could be made. We recognize the importance to the defendant of these motions, and certainly encourage the district court's concern with ruling appropriately. However, the time these motions necessarily require is a consideration in our determination that the delay was not unreasonable.

Within the 354 days from arrest to his trial, Vargas received two preliminary hearings and was arraigned twice, six motion hearings were held, he went through two attorneys and four judges, and was evaluated at the State Hospital for his competence to stand trial. Rather than experiencing unnecessary or unreasonable delay, the district court seems to have been quite efficient in bringing Vargas to trial. We find no violation of Vargas' constitutional right to a speedy trial.

## V. CONCLUSION

We find no abuse of discretion in the district court's rulings, no violation of Vargas' constitutional rights, and sufficient evidence to sustain his convictions. Accordingly, the convictions and sentences are affirmed.

MACY, Justice, specially concurring.

I concur with the majority opinion but feel obliged to write separately on the speedy trial issue. The majority finds that the trial was held within 120 days of Vargas's arraignment as is required by W.R.Cr.P. 48 but then proceeds to conduct an analysis under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The United States Supreme Court specifically gave the states the freedom to dictate a reasonable, definable period of time in which trials must be held. *Barker,* 407 U.S. at 523, 92 S.Ct. 2182. We did just that by adopting W.R.Cr.P. 48. It is my opinion that application of the *Barker* analysis since our adoption of W.R.Cr.P. 48 is inappropriate. I believe that this rule provides the exclusive framework by which we should analyze speedy trial issues.

I am also concerned with the majority opinion's treatment of the preindictment delay. The majority seems to combine the preindictment delay time with the time between the arraignment and trial and applies the *Barker* factors to the total time period. I do not think that this approach is proper. Traditionally, when we have analyzed preindictment delays, we have considered whether a preindictment delay substantially prejudiced the defendant's right to have a fair trial and whether the prosecution intentionally delayed the proceeding in order to gain a tactical advantage. *McDermott v. State*, 897 P.2d 1295, 1300 (Wyo.1995); *Phillips v. State*, 835 P.2d 1062, 1069 (Wyo.1992).

In my opinion, we should have decided this case by using our established preindictment delay and W.R.Cr.P. 48 speedy trial analyses instead of by applying the *Barker* factors. My specially concurring opinions in *Hall v. State*, 911 P.2d 1364, 1371 (Wyo.1996) (Macy, J., specially concurring), and in *Yung v. State*, 906 P.2d 1028, 1037 (Wyo.1995) (Macy, J., specially concurring) continue to reflect my ideas on the matter.