Ralph TRUJILLO, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–205.

Supreme Court of Wyoming.

April 18, 2000.

Representing Appellant: Tina N. Hughes, Cheyenne, WY. Argument by Ms. Hughes.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Assistant Attorney General. Argument by Ms. Cooley.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

Convicted of possession of marijuana and possession with intent to deliver psilocybin mushrooms, appellant Ralph Trujillo (Trujillo) contends that the district court erred in admitting evidence of his prior drug transactions; that he was denied his constitutional right to counsel at sentencing; that he has been prohibited from freely exercising his religion; and that he was denied a fair trial due to ineffective assistance of counsel. No errors occurred at trial, and we affirm the convictions. However, because we find that appellant did not knowingly and voluntarily waive his right to counsel at sentencing, we remand for re-sentencing.

### ISSUES

Trujillo presents four issues for our review:

1. Did the trial court's permission of the testimony that Appellant had previously bought and sold marijuana, by the arresting agent in the previous cases (Agent Rich Spencer), with detailed testimony about the prior drug transactions, violate W.R.E. 401 and 404, and result in harmful error?

2. Was Appellant denied his Fourteenth Amendment right to due process and his Sixth Amendment right to counsel when the trial court failed to appoint an attorney to represent him at sentencing?

3. Were Appellant's constitutional rights to free exercise of his religion violated by his arrest and subsequent conviction for the possession of mushrooms, in view of the fact that Appellant articulated a legitimate religious and cultural reason to be in possession of the mushrooms?

4. Did the trial performance of Appellant's counsel constitute ineffective assistance of counsel?

Appellee State of Wyoming restates the issues:

1. Whether the district court properly admitted evidence of Appellant's prior drug activities?

2. Whether Appellant, by his own actions in continually delaying the proceeding for over two years, waived his right to counsel at the sentencing hearing?

3. Whether Appellant was denied his constitutional right to the free exercise of his religion?

4. Whether Appellant was denied effective assistance of counsel at trial?

### FACTS

Throughout the day of August 18, 1996, Officer Jesse Prescott of the Worland Police Department observed the residence at 419½ Obie Sue Avenue, where he suspected narcotics transactions were taking place. During the course of his observation, Officer Prescott observed a green van parked in front of the residence, and he asked dispatch to run a license plate inquiry on the vehicle. Dispatch reported that the van belonged to Mary Sorelle, and there was an outstanding felony warrant for her arrest. When the van drove away from the residence, Officer Prescott pursued. He could see two people in the vehicle through the rear windows and, after he turned on his overhead lights, he saw the driver of the vehicle reach down between the seats.

When the vehicle stopped, the driver exited immediately and met Officer Prescott between their two vehicles. Officer Prescott asked if Mary Sorelle was in the van. The driver reported that she was not, and he identified Trujillo as the passenger. Officer Prescott asked if he could see a driver's license. The driver admitted his license had been suspended in Colorado, but he did produce a Colorado ID card identifying him as Bernice Sorelle (Sorelle). During this exchange, Sorelle seemed nervous, and he falsely stated he was on his way home from the store. While Officer Prescott was ascer-

taining the identity of Sorelle, Officer Donald Keeler of the Worland Police Department arrived on the scene.

Officer Prescott asked if he could search the van, and Sorelle said, "Sure. Go ahead." Before searching the van, Officer Prescott informed Sorelle he would need to do a protective pat down. During the pat down, Officer Prescott found a knife and a baggie containing a green leafy substance, which Sorelle admitted was marijuana. Sorelle was placed under arrest, and Officer Prescott informed Officer Keeler he was going to search the vehicle pursuant to the arrest. Officer Keeler then asked Trujillo to step out of the van while the search was conducted.

Between the seats, Officer Prescott found a brown cosmetic bag containing several baggies of psilocybin mushrooms, and two socks with small scales inside them. While Officer Prescott was searching the van, Trujillo told Officer Keeler he had some mushrooms in the van in a shaving kit. Officer Keeler informed Officer Prescott of the admission, and Prescott responded that he had already found the mushrooms. Officer Keeler arrested Trujillo and searched him. A small baggie containing a single mushroom was retrieved from Trujillo's front pants pocket. Further inspection of the shaving kit revealed several small pieces of paper, two with the words "R. T. is running," and two with "Ralph was here" written on them. The bag also contained a piece of paper which was identified later as a "pay and owe sheet."

Trujillo was taken to the police station, where he voluntarily relinquished a marijuana pipe containing .3 grams of marijuana from his underwear.

At trial, Trujillo was the only defense witness, and he admitted he had possessed marijuana and psilocybin mushrooms. In his defense, however, he asserted he had no intent to deliver the mushrooms to others. Trujillo, who is part Native American, stated that, "I was going to go camping and take them. I was going to go back to the Indian ways, and I was going to take a spiritual trip." Although he admitted peyote traditionally has been used to facilitate such spiritual trips, he said that mushrooms were an acceptable substitute, because it has to be a "natural high." Trujillo also explained that he only brought the scales to ensure he would not be "ripped off" in his purchase, and that the pay-and-owe sheets were in reality figures related to his employment as a roofing contractor.

Trujillo was convicted of possession with intent deliver a controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (Michie 1997)[1] for the psilocybin mushrooms, and possession of a controlled substance in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(A) (Michie 1997)[2] for the marijuana. He was sentenced to one year for the misdemeanor conviction, to be served concurrently with a term of five to seven years in the Wyoming State Penitentiary for the felony. This timely appeal followed.

1. Wyo. Stat. Ann. § 35–7–1031(a)(ii) provides:
 (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
 * * *
 (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both[.]
 Psilocybin is classified as a Schedule I controlled substance by Wyo. Stat. Ann. § 35–7–1014(d)(xix) (Michie July 1994 Rpl.).

2. Wyo. Stat. Ann. § 35–7–1031(c)(i)(A) provides in pertinent part:
 (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:
 (i) And has in his possession a controlled substance in the amount set forth in this paragraph is guilty of a misdemeanor punishable by imprisonment for not more than twelve (12) months, a fine of not more than one thousand dollars ($1,000.00), or both. * * * For purposes of this paragraph, the amounts of a controlled substance are as follows:
 (A) For a controlled substance in plant form, no more than three (3) ounces[.]
 Marijuana is classified as a Schedule I controlled substance by Wyo. Stat. Ann. § 35–7–1014(d)(xiii) (Michie July 1994 Rpl.).

## STANDARDS OF REVIEW

### Admission of 404(b) Evidence

 We recently summarized the considerations relevant to review of evidentiary rulings in *Solis v. State*, 981 P.2d 34, 36 (Wyo.1999):

> Evidentiary rulings are within the sound discretion of the trial court and include determination of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. *Punches v. State*, 944 P.2d 1131, 1136-37 (Wyo.1997). This court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. *Brown v. State*, 944 P.2d 1168, 1170 (Wyo.1997); *Wilson v. State*, 874 P.2d 215, 218 (Wyo. 1994). In determining whether the trial court abused its discretion, the query is whether the court could reasonably conclude as it did, and whether its ruling was arbitrary or capricious. *Vaughn v. State*, 962 P.2d 149, 151-52 (Wyo.1998). The burden of establishing such abuse lies with the defendant. *Barnes v. State*, 858 P.2d 522, 527 (Wyo.1993).

### Sentencing Without Counsel

 Because of the constitutional implications present when a defendant is forced to proceed pro se, after refusing, either explicitly or implicitly, to accept the services of appointed counsel, we conduct a *de novo* review. *Vargas v. State*, 963 P.2d 984, 989 (Wyo.1998). Our review is conducted with the understanding that a waiver of counsel which is not made knowingly and voluntarily is tantamount to denial of counsel, mandating reversal. *Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998). We consider the record as a whole when determining whether the defendant knowingly and voluntarily relinquished his right to representation of counsel. *Id.;* *Van Riper v. State*, 882 P.2d 230, 234 (Wyo. 1994).

### Effective Assistance of Counsel

 Our jurisprudence regarding effective assistance of counsel makes plain that:

> In order to prevail on his claim of ineffective assistance of counsel, [Trujillo] must make the dual showings that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Smith v. State*, 959 P.2d 1193, 1198 (Wyo.1998); *Martinez v. State*, 943 P.2d 1178, 1184 (Wyo.1997). We invoke a strong presumption that counsel rendered adequate and reasonable assistance, making all decisions within the bounds of reasonable professional judgment. *Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998); *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo. 1995).

*Hornecker v. State*, 977 P.2d 1289, 1291 (Wyo.1999).

### DISCUSSION

### Admission of 404(b) Evidence

On March 9, 1998, the State filed a notice of intent to present evidence of Trujillo's prior drug activity through the testimony of Special Agent Richard Spencer. The notice stated the prior bad acts evidence was being offered for the purposes of showing "opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident in this case." Trujillo filed a traverse to the notice on March 16, 1998, which contended that such evidence was more prejudicial than probative, that the acts were too remote to be probative, and that the acts were too dissimilar to be probative. The district court held a 404(b) hearing in the midst of trial, after opening statements and after witness testimony had begun, but before Agent Spencer was allowed to testify. After carefully considering the evidence in light of the factors outlined in *Vigil v. State*, 926 P.2d 351 (Wyo. 1996), the district court found that the prior bad acts evidence did "legitimately go to show the elements of intent or knowledge, if not absence of mistake or accident," and that the probative value of the evidence outweighed any prejudicial effect. Just before Agent Spencer took the stand, Trujillo renewed his objection to the testimony, but the court stood on its previous ruling.

Agent Spencer testified to two prior drug transactions with Trujillo. In the first transaction, which took place in 1989, Agent

Spencer bought one quarter ounce of marijuana from Trujillo for $30. In the second transaction, which took place in 1990, Agent Spencer sold Trujillo two pounds of marijuana at $1000 per pound. The terms of the second deal were that Trujillo would pay $1000 up front for one pound, and the second pound would be "fronted" to him. Agent Spencer then told the jury Trujillo had been convicted for both transactions in Hot Springs County.

On appeal, Trujillo contends that Agent Spencer's testimony was improperly admitted under W.R.E. 404(b). Although unclear, the thrust of his argument appears to be that evidence of his prior convictions was not relevant to any issue in this case. The State responds that evidence of the prior drug transactions was relevant to the issue of intent.

> W.R.E. 404(b) provides:
>
> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have stated:

> The specific test to determine if Rule 404(b) evidence is admissible is whether it is relevant evidence offered for a proper purpose; its probative value is not substantially outweighed by its potential for unfair prejudice; and a limiting instruction is given when requested. *Vigil v. State,* 926 P.2d 351, 357 (Wyo.1996) (citing *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)).

*Solis v. State,* 981 P.2d 28, 30 (Wyo.1999).

■ We first examine whether the evidence was offered for a proper 404(b) purpose. In *Noetzelmann v. State,* 721 P.2d 579, 582–83 (Wyo.1986), we recognized that numerous courts have held evidence of prior involvement in drug trafficking is admissible as proof of intent and, where the defendant contests the State's assertion that he intend-ed to engage in a drug transaction, such evidence is particularly relevant. *See also Admissibility, in prosecution for illegal sale of narcotics, of evidence of other sales,* 93 A.L.R.2d 1097 § 5 (1964). Trujillo's defense, announced by his attorney in opening statement, was that he possessed the mushrooms solely for personal consumption. Evidence establishing that Trujillo had engaged in narcotics transactions, one as a seller and another in which he would be "fronted" a pound of marijuana, was thus, as in *Noetzelmann,* 721 P.2d at 583, particularly relevant to the issue of intent. Given this finding, we cannot disagree with the district court's further determination that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to Trujillo. *Id.* Finally, a limiting instruction was given as requested. Accordingly, we conclude Trujillo has not met his burden of showing an abuse of discretion in the district court's admission of Agent Spencer's testimony.

### Sentencing Without Counsel

In his second claim of error, Trujillo asserts that he was deprived of his constitutional right to counsel at sentencing. In response, the State contends that Trujillo conducted himself in such a manner as to justify a finding that he implicitly waived his right to counsel. In order to understand how Trujillo came to be sentenced without the benefit of an attorney, it is necessary to recount the procedural history of the case in the district court.

A six count information was filed against Trujillo on August 20, 1996. He made his initial appearance the same day, and the court appointed counsel to represent him. Counsel from the Public Defender's Office entered an appearance on December 6, 1996, and a continuance of arraignment was granted at counsel's request. Trujillo failed to appear for two consecutive arraignment hearings, and defense counsel was allowed to withdraw.

Five months later, on May 29, 1997, Trujillo was found and arrested. A second public defender was appointed, and Trujillo was arraigned on June 5, 1997. He was released on his own recognizance on August 21, 1997.

On September 22, 1997, the State petitioned to revoke Trujillo's pre-trial release, and a bench warrant was issued the following day. Trujillo was again arrested, and for reasons not apparent in the record, an entry of appearance was filed by a third attorney. Trujillo was again granted pre-trial release but was arrested less than a month later for failure to comply with the court's conditions of release.

Trujillo's third court-appointed attorney filed a motion to withdraw on January 9, 1998. He asserted that, "Further representation is made ineffective by the breakdown of the attorney/client relationship and lack of effective communication." The motion was granted, and Trujillo was appointed his fourth attorney. Because trial was set for January 29, 1998, defense counsel requested and received a continuance; however, the court specifically found that "all prior delays in trying this matter were caused by the Defendant."

At some point after the trial, Trujillo filed a grievance against his fourth attorney with the Board of Professional Responsibility of the Wyoming State Bar. Accordingly, counsel moved to withdraw on May 13, 1998. With sentencing scheduled for May 21, 1998, the State requested that sentencing proceed as scheduled. The motion to withdraw was granted on May 20, 1998, and the court proceeded to sentence Trujillo, without counsel, on May 21, 1998. At the hearing the trial judge informed Trujillo:

> The Court will proceed with the hearing today. I think that [the prosecutor] is quite right. This is one of the oldest pending criminal cases that I am aware of anywhere in the Big Horn Basin. It's very unusual for a case to go on this long without being resolved.

> In looking through the file, it's apparent that, Mr. Trujillo, you have done about everything under the sun to delay it and put it off as long as you could, even to the extent of failing to appear, having your bond revoked and being taken into custody.

> The record speaks for itself, and it certainly is voluminous. You've had a number of very capable lawyers representing you.

> I don't know how many lawyers you think you're entitled to have, but you have driven many of them away.

> The Court observed, prior to the trial and during the trial, that [trial counsel] did a very capable job of representing you. He may not have let you direct him in how it was going to be run, but that's not what lawyers are for. He cannot let you tell him how to try your case. He's the lawyer. He's appointed to represent you. For the same reason that you could not be appointed to be his co-counsel, you can not tell him how he's going to try your case, because that's his responsibility.

> He filed the proper motions. He presented the matters to the Court properly, and the Court ruled. The matter was tried, and he represented you capably during the course of the trial. And this case has been drug out as far as it's going to be. I will go ahead and proceed with sentencing at this time.

It is with these facts in mind that we consider whether Trujillo's right to counsel has been abridged.

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. In *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court held that the Fourteenth Amendment incorporated the Sixth Amendment right to counsel, and accordingly required the states to make appointed counsel available to indigent defendants in all "criminal prosecutions." Counsel, therefore, is required at those "critical stages" in which the substantial rights of the accused may be affected. *Nelson v. State*, 934 P.2d 1238, 1240 (Wyo.1997); *Duffy v. State*, 837 P.2d 1047, 1052 (Wyo.1992). We have held that sentencing is a "critical stage" where substantial rights may be affected and, therefore, the right to counsel attaches. *Nelson*, 934 P.2d at 1241; *Christy v. State*, 731 P.2d 1204, 1206–07 (Wyo.1987).

■ Conversely, the Sixth Amendment also guarantees the right of every citizen to conduct his own defense. *Faretta v. Califor-*

*nia,* 422 U.S. 806, 832, 95 S.Ct. 2525, 2539, 45 L.Ed.2d 562 (1975). In *Van Riper v. State,* 882 P.2d 230 (Wyo.1994), we explained:

A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. However, to be valid, the trial judge must ensure that the waiver of counsel is "an intentional relinquishment or abandonment of a known right or privilege." *United States v. McConnell,* 749 F.2d 1441, 1450–51 (10th Cir.1984) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se.

*Van Riper,* 882 P.2d at 234 (quoting *United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992)). *See also* Wyo. Stat. Ann. § 7–6–107.[3]

We have also recognized that a defendant, by refusing, at trial, to accept the services of appointed counsel, can waive his right to counsel. In *Vargas v. State,* 963 P.2d 984, 990 (Wyo.1998), we conducted

two distinct inquiries: first, whether Vargas voluntarily waived the right; and second, whether the right was knowingly and intelligently waived. When a defendant is given a clear choice between waiver of counsel and retention of present counsel, the choice is voluntary so long as defendant's refusal to proceed with able appointed counsel is without good cause. Waiver of counsel is knowing and intelligent where the record establishes that the defendant had a sense of the magnitude of the undertaking and the risks inherent in proceeding pro se.

(Citations omitted.) In *Vargas,* because the record revealed that Vargas had been warned that substitute counsel would not be appointed and advised numerous times about the dangers of proceeding pro se, we concluded that Vargas had knowingly and voluntarily waived his right to counsel by refusing to proceed with appointed counsel. *Id.*

Other courts have recognized that a defendant, by his conduct, can waive his right to counsel. The rationale behind such a finding was aptly explained by the United States Court of Appeals for the Third Circuit in *United States v. Goldberg,* 67 F.3d 1092 (3rd Cir.1995):

Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel. *See, e.g., United States v. Bauer,* 956 F.2d 693 (7th Cir.) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by conduct), *cert. denied,* 506 U.S. 882, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992); *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990) (district court properly treated defendant's dilatory conduct as request to proceed pro se).

Both *Bauer* and *Allen,* however, recognize that to the extent that the defendant's actions are examined under the doctrine of "waiver," there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives *Faretta* warnings.

*Goldberg,* 67 F.3d at 1100 (some citations omitted).

As is apparent from the foregoing, the United States Court of Appeals for the Tenth Circuit requires that a criminal defendant engaged in dilatory conduct be advised in the same manner as if he were voluntarily asserting his right to self representation. The *Allen* court said, "A court is under no less

---

**3.** Wyo. Stat. Ann. § 7–6–107 (Michie 1997) provides:

A person who has been advised of his rights under W.S. 7–6–105 [entitled Advisement of rights; appointment of attorney] may waive any right provided by this act if at the time of or after waiver, the court finds that the person

has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise made according to law. Before making its findings, the court shall consider such factors as the person's age, education, familiarity with the English language and the complexity of the crime involved.

obligation to ensure that waiver is knowing and intelligent when voluntariness is deduced from conduct than when it is asserted expressly." *United States v. Allen,* 895 F.2d 1577, 1579 (10th Cir.1990). The rationale for such a rule is simply that without such a warning, a criminal defendant is not placed on notice that his continued dilatory or obstructive conduct will result in an implied waiver of counsel.

The United States Supreme Court has never found that such a warning is constitutionally mandated, however, there does appear to be instructive precedent available from that Court on this issue. The Third Circuit Court of Appeals noted in *Goldberg:*

> Although the Supreme Court has not ruled directly on this issue, instructive is *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In *Allen* the Court considered whether a trial court could remove an unruly defendant from the courtroom without violating his Sixth Amendment right to be present at his trial. The Court held that
>
> > a defendant can lose his [Sixth Amendment] right to be present at trial if, ***after he has been warned by the judge*** that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom.
>
> *Id.* at 343, 90 S.Ct. at 1060–61 (emphasis added) (footnote omitted). Whether or not the warning was required as a matter of constitutional law or under the particular facts is somewhat unclear. Suffice it to say that the Court has approved a trial court's decision to deprive a defendant of a fundamental constitutional right at least where the defendant is aware of the consequences of his actions, but regardless of

whether the defendant affirmatively wishes to part with that right.

*Goldberg,* 67 F.3d at 1100–01.

■ In accordance with the foregoing, we hold that a waiver of counsel by conduct is not knowingly and voluntarily made when the criminal defendant has not been warned that waiver will be the result of his continued dilatory and obstructive behavior. The warning should be comparable in content to the warning given to a defendant who affirmatively asserts his right to self representation. A defendant who faces the possibility of a waiver of counsel by conduct must have a "sense of the magnitude of the undertaking and the risks inherent in proceeding pro se" before the right can be waived. *Vargas v. State,* 963 P.2d at 990.

■ From the district court's comments at sentencing, it is obvious the court believed Trujillo had engaged in a protracted course of intentional obstruction. However, the district court never advised Trujillo that if he continued such behavior he would be forced to proceed without counsel and that such an undertaking is fraught with danger. We, therefore, remand this case for re-sentencing and direct the sentencing court to appoint counsel to assist Trujillo. *Nelson,* 934 P.2d at 1241; *see United States v. Silkwood,* 893 F.2d 245, 249 (10th Cir.1989), *cert. denied Silkwood v. United States,* 496 U.S. 908, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990) (where the court remanded for re-sentencing after finding that defendant had been deprived of his right to counsel at sentencing).

### Free Exercise of Religion

Trujillo next asserts that the statutes criminalizing drug possession with intent to deliver violate his constitutional right to freely exercise his religion.[4] Trujillo's defense at trial consisted of his statements that he intended to go on a "spiritual trip," coupled

---

4. The First Amendment to the Constitution of the United States of America provides in pertinent part:

 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]

 Similarly, the Constitution of the State of Wyoming provides in Article 1, § 18:

 The free exercise and enjoyment of religious profession and worship without discrimination or preference shall be forever guaranteed in this state, * * * but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state.

with the implicit assertion that such trips are part of a religious ritual. Trujillo did not argue to the district court, however, that his possession with intent to deliver a controlled substance was a privileged religious exercise that necessitated dismissal of the criminal charges. This failure renders this argument an integral part of Trujillo's ineffective assistance of counsel argument, and we will, therefore, address the issue within his ineffective assistance of counsel claim.

### Effective Assistance of Counsel

Trujillo finally claims that he was denied effective assistance of counsel when his attorney: (1) failed to continue to object to the testimony of Agent Spencer which went beyond the scope of the State's 404(b) proffer, and (2) failed to call any witnesses to corroborate Trujillo's testimony. Trujillo, in his reply brief, additionally contends that if he is foreclosed from asserting, on appeal, that his free exercise rights have been violated, the failure to raise the issue before the trial court is further evidence of ineffective assistance of counsel. We find each of these contentions to be without merit.

As to Trujillo's first claim of ineffectiveness, we note that Agent Spencer wore two hats in this trial. He testified both as a 404(b) witness and as an expert law enforcement witness. Over the objection of defense counsel, Agent Spencer testified about his knowledge of the drug trade in general. He described how drugs are packaged and how much psilocybin mushrooms generally cost. Agent Spencer stated that Trujillo did not bring a scale to an earlier transaction to verify the amount of marijuana he was actually receiving. He went on to explain that it would be rare in a drug transaction for the purchaser to bring his own scales, rather it is generally the seller's obligation to prove that his goods are accurately packaged. Agent Spencer also described the general form and function of a pay-and-owe sheet and identified one piece of paper seized from the bag in the van as a pay-and-owe sheet.

The prosecutor's proffer at the 404(b) hearing was limited to Agent Spencer's testimony as a 404(b) witness. However, we know of no rule of law which would limit such a witness to his 404(b) proffer when he testifies in his capacity as an expert witness on topics unrelated to the prior bad acts of the accused. Regardless, counsel did object to the testimony as being "beyond the purpose of Mr. Spencer being called." That objection was promptly overruled by the district court. Given trial counsel's timely objection to this testimony as well as the 404(b) testimony, we find no merit in the contention that counsel should have obstructed the flow of the trial by making continuous objections. *See Jackson v. State*, 891 P.2d 70, 77 (Wyo.1995) (where motion in limine filed, and evidence ruled admissible by trial court, further objection by trial counsel "would appear to be nothing more than an exercise for the record").

As for Trujillo's second claim of ineffectiveness, counsel's alleged failure to call additional witnesses, there is no evidence these claimed witnesses' testimony would have been favorable to Trujillo's defense. Where, as here, there is no evidence in the record to support or discount the claim of ineffectiveness, it is incumbent upon appellate counsel to move for a partial remand. *Hornecker v. State*, 977 P.2d 1289, 1291 (Wyo.1999); *see also Cureton v. State*, 950 P.2d 544 (Wyo.1997); *Calene v. State*, 846 P.2d 679 (Wyo.1993). The bare assertion that the testimony of potential witnesses would have been favorable is insufficient to rebut the presumption of effective assistance of counsel.

Finally, we turn to Trujillo's claim that the failure to raise the free exercise issue before the trial court, via a motion to dismiss, constitutes ineffective assistance of counsel. The Free Exercise Clause of the First Amendment guarantees that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Religious free exercise embraces two concepts: the freedom to believe and the freedom to act. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). While the freedom to believe is absolute, the freedom to act cannot be. "Conduct remains subject to regulation for the protection of society. The

freedom to act must have appropriate definition to preserve the enforcement of that protection." *Id.* 310 U.S. at 304, 60 S.Ct. at 903, 84 L.Ed. 1213 (footnote omitted).

In *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the United States Supreme Court concluded the free exercise clause did not prohibit application of Oregon drug laws to ceremonial ingestion of peyote. The Court reiterated that it has "consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Id.* 494 U.S. at 879, 110 S.Ct. at 1600, 108 L.Ed.2d 876 (quoting *United States v. Lee,* 455 U.S. 252, 263 n. 3, 102 S.Ct. 1051, 1058 n. 3, 71 L.Ed.2d 127 (1982) (Stevens, J., concurring in judgment)). The Court also specifically rejected the contention that a neutral law of general applicability that burdens a religious practice must be justified by a compelling governmental interest. *Smith,* 494 U.S. at 885, 886 n. 3, 110 S.Ct. at 1604 n. 3, 108 L.Ed.2d 876. The Court wrote:

> The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, "cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development." To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is compelling—permitting him, by virtue of his beliefs, "to become a law unto himself,"—contradicts both constitutional traditions and common sense.

*Smith,* 494 U.S. at 885, 110 S.Ct. at 1603, 108 L.Ed.2d 876 (citation omitted); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993).[5]

In the present case, even if we assume Trujillo can establish his religious beliefs, he does not establish the laws he challenges are anything other than valid and neutral laws of general applicability. He is, therefore, bound to obey them regardless of his religious beliefs. *Smith,* 494 U.S. at 879, 110 S.Ct. at 1600, 108 L.Ed.2d 876; *United States v. Meyers,* 95 F.3d 1475, 1481 (10th Cir.1996), *cert. denied* 522 U.S. 1006, 118 S.Ct. 583, 139 L.Ed.2d 421 (1997). Given this, a motion to dismiss by trial counsel, relying on the free exercise clause, would have been without merit. We, thus, conclude trial counsel's performance was not deficient.

### CONCLUSION

Finding no errors occurred at trial, we affirm Trujillo's convictions; however, because we find that he did not knowingly and voluntarily waive his right to counsel, we remand for re-sentencing. While we hesitate to make such a decision in the face of the district court's obvious conclusion that Trujillo's behavior was intentionally obstructive, and "[w]hile we can understand, and perhaps even sympathize, with the frustration and exasperation of the district court judge, even well-founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights." *United States v. Welty,* 674 F.2d 185, 189 (3d Cir.1982). We also take comfort in the knowledge that the warning requirement we impose today for the protection of the fundamental right to counsel imposes only a minimal burden on the trial courts of the state.

---

5. In response to the *Smith* Court's rejection of the compelling government interest test, Congress passed the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. (RFRA), which reinstituted the compelling interest test. 42 U.S.C. § 2000bb(b)(1). However, RFRA was held unconstitutional in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).