Courtney James VAN RIPER,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–187.

Supreme Court of Wyoming.

Sept. 30, 1994.

Courtney J. Van Riper, pro se.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., and D. Michael Pauling, Sr. Asst. Atty. Gen., for appellee.

Before GOLDEN, C.J., THOMAS, MACY and TAYLOR, JJ., and CARDINE, J. (Retired).

MACY, Justice.

Appellant Courtney James Van Riper appeals from his conviction for felony larceny by bailee.

We affirm as modified.

## ISSUES

Appellant presents eight issues:

I. Whether defendant was denied the Sixth Amendment right to the assistance of counsel at trial and sentencing after initially asserting the right to self representation but on the same day, and well in advance of trial, advised the trial court of an unambiguous desire for counsel and an inability to proceed at trial without counsel?

II. Whether defendant made a voluntary waiver of the Sixth Amendment right to jury trial by executing a written waiver which stated that without counsel he could not proceed with selection of a jury?

III. Whether defendant was denied the Sixth Amendment Confrontation Clause right to impeach the State's primary witness when the district court denied pretrial defense motions for the taking of handwriting exemplars from the witness prior to trial, and at the time of cross-examination?

IV. Whether the trial court erred in denying motions to suppress oral statements obtained by arresting police officers prior to formal arrest but after physical seizure which was based on less than probable cause?

V. Whether a district court has jurisdiction to order—or may the State obtain any process—seizing, attaching, or levying against a defendant's funds or bank account in satisfaction of prosecution costs or restitution when those funds are exempt under Title 38 U.S.C. § 5301(a)?

VI. Whether the Wyoming Constitution permits imposition of institutional jury costs on a criminal defendant?

VII. Whether a defendant's Fourteenth Amendment Due Process Clause and Sixth Amendment Confrontation Clause rights are violated when the oral pronouncement of sentence is altered by the written judgment and sentence mittimus?

VIII. Whether a defendant's Fourteenth Amendment due process rights are violated when sentence is imposed based in part upon materially false information provided by the prosecutor?

### FACTS

On November 30, 1992, Appellant told a salesman at Tyrrell Chevrolet in Cheyenne, Wyoming, that he would like to look at an economy car. The salesman showed him a 1985 Chrysler New Yorker and allowed him to test drive the car. Appellant failed to return with the car. The salesman notified his supervisor, and later that afternoon they advised the Cheyenne Police Department that the car had been stolen. A police officer entered the car's vehicle identification number into the NCIC computer system.

In January 1993, Tyrrell Chevrolet received an unsigned, handwritten letter which stated:

Dear T[y]rrell Chevrolet,

I would just like to thank you for the Chrysler New Yorker, especially [the salesman]. I only have one question[.] [D]oes the car have any warranty left, otherwise the car runs great, it gets 35 miles to the gallon. Once again thank you.

Sincerely,

?

ps. It's also great for off road use.

On February 2, 1993, deputies of the Hillsborough County sheriff's office in Tampa, Florida, questioned Appellant while they were investigating an unrelated offense. According to the deputies, that afternoon they went to a lounge which was located in Tampa, and they asked the manager to send Appellant outside to the parking lot. When Appellant came out, one of the deputies asked him for identification, and Appellant gave him an altered pilot's license. The deputy advised Appellant of his *Miranda* rights and asked him how he had gotten to the lounge and where he was staying. Appellant said that he had come by cab and that he did not know the name of his motel.

The second deputy observed a Chrysler New Yorker, with pilot's wings on its front license plate, which was backed into the bushes at the edge of the parking lot. Appellant was wearing a pilot's jacket and pilot's wings on his belt buckle. The deputy conducted an NCIC search for the rear license plate number, and the search revealed that the plate had been issued to a vehicle which was listed as being stolen and whose description did not match that of the Chrysler New Yorker. The first deputy asked Appellant if he could pat him down for weapons, and Appellant said: "[T]hat would be fine." Appellant, telling the deputy that it contained keys, reached into his right front pocket. He removed the keys, and a set of car keys with the Chrysler logo was among them. The second deputy asked Appellant whether the car was his, and Appellant admitted that he had stolen the Chrysler New Yorker from a car dealership in Cheyenne, Wyoming. The first deputy advised Appellant a second time of his *Miranda* rights and placed him under arrest.

Appellant waived his right to have an extradition hearing, and he was returned to Wyoming. Appellant was charged on February 5, 1993, with felony larceny by bailee in violation of WYO.STAT. § 6–3–402(b) and (c)(i) (1988). He requested that an attorney be appointed, and the Laramie County Court appointed the Public Defender to represent him. Appellant subsequently replaced the Public Defender with private counsel.

On April 5, 1993, Appellant filed a "Defendant's Notice of Self–Representation" which stated:

NOTICE is hereby given that COURTNEY J. VAN RIPER, defendant named in the above styled criminal matter, hereby invokes his Sixth Amendment right to self-representation under *Faretta v. California*, 422 U.S. 806 [95 S.Ct. 2525, 45

L.Ed.2d 562] (1975); and W.Dist.Ct.R. 101(a). Defendant shows, in furtherance of W.S. § 7–6–107, that: (1) he is fo[ ]rty-five years of age; (2) is college educated and has completed an accredited course in paralegal science; and (3) has extensive and successful experience in criminal law at the state through federal district to Supreme Court levels.

At that time, Appellant informed the district court: "[D]efendant has been unable to access his savings account at Norwest Bank in order to pay the agreed upon retainer to [private counsel]. Accordingly, [private counsel] will not be further involved in this matter."

On April 16, 1993, the district court granted Appellant's request to represent himself and postponed the trial date from May 3, 1993, until June 7, 1993. Appellant filed a "Termination of Counsel" on that date which stated:

I, hereby terminate [private counsel] as my attorney in the above-entitled matter and direct that he immediately cease all efforts in my behalf.

I realize that I have future Hearings in this matter and that it is my responsibility to get new counsel.

Later on that same day, Appellant informed the district court that he wanted to hire another attorney before trial. The district court provided Appellant with a list of attorneys' names and addresses.

On April 30, 1993, the district court held a motions hearing, and the following exchange occurred:

THE COURT: Now, is there anything else that you want to bring up, Mr. Van Riper?

MR. VAN RIPER: Other than a little bit of follow up. I received from the court, a little bit dated, but it was a list of attorneys. I'm presently in contact with [an attorney], and he is—I guess he's going to have somebody come over.

THE COURT: Oh good. So you might be able to get a lawyer within the next week or so?

MR. VAN RIPER: Well, if possible.

THE COURT: Great.

MR. VAN RIPER: Thank you.

The district court released Appellant's $5,000 cash bond on May 5, 1993, in order to permit Appellant to pay to retain an attorney.

On June 2, 1993, Appellant filed a "Motion for Order Rescheduling Trial." He requested an additional thirty-day postponement because, in part, "defendant has been unable to engage competent counsel for trial." The next day, the district court held a hearing on Appellant's motion, and the following colloquy occurred:

MR. VAN RIPER: Well, now, if I can go back a little bit. Since we had our row, I've been trying to hire counsel. I've got some letters [from attorneys] right here.... They're busy, they can't take any more cases. Not that I haven't been trying to get an attorney.

THE COURT: Well, I could get you one right now. You have $5,000, don't you?

MR. VAN RIPER: I do. I've got more than that.

THE COURT: How much are you willing to pay?

MR. VAN RIPER: Well, I don't know.

THE COURT: Well, I could call some people right now, if you are willing to come up with five or $10,000.

MR. VAN RIPER: Well, Your Honor, that would leave me pretty destitute.

THE COURT: So you don't want to pay for an attorney?

MR. VAN RIPER: No, no, that's not it. That's not it at all. I'm just leery of attorneys.

THE COURT: You have an absolute right to proceed on your own, and you made that decision.

Your motion before the court is to delay the trial date. Now the grounds that you allege are that you need more information. It seems to me that we've taken care of that.

. . . .

I'm inclined to go forward.

I'm impressed with your ability. You seem to know what you're doing. I'm not too concerned about you being prejudiced

by going to trial next week. You have a pretty good handle on what is going on.

On the date of the trial, Appellant, having failed to retain counsel, filed a "Waiver of Trial by Jury." He was found guilty after a bench trial of one count of felony larceny by bailee. The district court sentenced him to serve a term in the Wyoming State Penitentiary of not less than six years nor more than nine years and ordered him to pay $2,491 in witness expenses, $2,760 in restitution, $50 to the crime victims' compensation account, and $360 in jury fees.

### RIGHT TO BE REPRESENTED BY COUNSEL

■ Appellant claims that he was deprived of his right to have counsel. The State argues that Appellant knowingly and voluntarily waived his right to have counsel, asserted his right to represent himself, never waived his right to represent himself, and never reasserted his right to be represented by counsel.

A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. However, to be valid, the trial judge must ensure that the waiver of counsel is "an intentional relinquishment or abandonment of a known right or privilege." *United States v. McConnell*, 749 F.2d 1441, 1450–51 (10th Cir.1984) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*.

*United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992) (some

citations omitted). The district court's failure to conduct a complete inquiry on the record into the defendant's understanding does not require reversal when "the surrounding facts and circumstances, including [the defendant's] background and conduct, demonstrate that [the defendant] actually understood his right to counsel and the difficulties of *pro se* representation and knowingly and intelligently waived his right to counsel." 941 F.2d at 1389. "[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

When Appellant asserted his right to represent himself, the district court did not formally make the findings described in WYO. STAT. § 7–6–107 (1987).[1] The district court asked Appellant about his prior trial experience; asked him what he knew about the rules of evidence, including hearsay evidence and using evidence to impeach witnesses; and asked him how he planned to investigate his case while he was in jail without having the assistance of counsel. The colloquy continued with the following exchange:

THE COURT: How do you expect to defend yourself effectively, by playing it by ear?

MR. VAN RIPER: The court will have to go ahead and convict me, and I'll address it on appeal. It's just that simple.

THE COURT: Very well. I'm going to let you defend yourself in this case. I don't think—I think you are a fool, but if you insist and persist to defend yourself, I have no choice but to let you do that.

Although Appellant had never conducted a trial before, he had pleaded guilty in at least one other case without having the assistance of counsel, and he had been convicted of at

---

1. Section 7–6–107 provides:

A person who has been advised of his rights under W.S. 7–6–105 may waive any right provided by [the Public Defender Act] if at the time of or after waiver, the court finds that the person has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise made according to law. Before making its findings, the court

shall consider such factors as the person's age, education, familiarity with the English language and the complexity of the crime involved.

Appellant does not challenge the adequacy of the advisement of rights which he received at his initial appearance pursuant to WYO STAT. § 7–6–105(b) (1987).

least three other offenses which were related to vehicle thefts. He filed twenty-six motions and other documents on his own before trial which included a formal notice that he would represent himself. In the notice, he stated that he was forty-five years old, and he claimed that he was college educated and that he had completed a course in paralegal science. Under these circumstances, Appellant's initial decision to waive his right to be represented by counsel was knowing, voluntary, and intelligent. *Willie,* 941 F.2d at 1389. *Cf. United States v. Treff,* 924 F.2d 975, 980 n. 7 (10th Cir.1991) (defendant "was not so much interested in defending against the crimes charged as he was in trying to inject trial error into the proceedings which could result in reversal on appeal").

■ Once he had asserted his right to represent himself, Appellant never requested to have appointed counsel, although he was experienced at requesting counsel since at his initial appearance he had requested and received appointed counsel. *See* WYO.STAT. § 7–6–104(d) (Supp.1993). Appellant declined the district court's offer to obtain counsel for him. After Appellant asserted his right to represent himself, the court had no duty to appoint counsel in the absence of a timely and affirmative request for counsel. Such a duty would require the district court to read the defendant's mind and would enable a defendant to play a "cat and mouse" game with the district court. *See Treff,* 924 F.2d at 979.

■ Appellant suggests that the district court had a duty to appoint standby counsel. To force an attorney on a defendant who has asserted his right to represent himself constitutes reversible error. *Ash v. State,* 555 P.2d 221, 224 (Wyo.1976), *cert. denied,* 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977). *See McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984).

> Of course, a State may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.

*Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46. *See, e.g., Roose v. State,* 753 P.2d 574 (Wyo.1988). The appointment of standby counsel is not mandatory. *See Sanchez v. Mondragon,* 858 F.2d 1462, 1463 n. 3 (10th Cir.1988), *overruled in part on other grounds by United States v. Allen,* 895 F.2d 1577 (10th Cir.1990).

■ Appellant expressly assumed the responsibility for obtaining another attorney. The district court warned him before trial about the consequences which could result if he failed to obtain counsel. While the district court had the discretion to appoint standby counsel, its failure to do so in this case did not constitute an abuse of that discretion.

■ Appellant asserts that the district court erred by failing to question why he discharged his attorneys. When a defendant discharges his attorney and elects to proceed on his own, the district court has a duty to ensure that the defendant is not proceeding on his own merely because his attorney was unprepared or incompetent. *United States v. Silkwood,* 893 F.2d 245, 248–49 (10th Cir. 1989). An inquiry about the defendant's reasons for being dissatisfied with his counsel is not required when the defendant otherwise states his reasons on the record. *Willie,* 941 F.2d at 1391.

■ Appellant replaced the Public Defender with private counsel; therefore, the district court did not have a duty to inquire about Appellant's reasons for being dissatisfied with the Public Defender. Appellant did not complain about his private counsel's performance in his notice that he would represent himself. At that time, his only stated reason for discharging his attorney was that he was "unable to access his savings account . . . in order to pay the agreed upon retainer [fee]." The district court did not have any reason to believe that Appellant had decided to proceed on his own because his attorney was incompetent or unprepared.[2] *Silkwood,*

---

2. After the district court granted his request to represent himself, Appellant criticized his attorney's performance. His criticisms are unsubstantiated. The attorney filed a timely motion to

893 F.2d at 248–49. The district court, therefore, did not have a duty to question Appellant about his motives for wanting to represent himself.

### RIGHT TO HAVE A JURY TRIAL

Appellant claims that he involuntarily waived his right to have a jury trial.

The requisite inquiry on the adequacy of jury waiver is of a dual nature: (1) was the waiver express and (2) was it knowing, intelligent and voluntary.

... If a defendant is competent to stand trial, he is bound by his express waiver....

... [T]he determination as to whether a jury waiver to be effective is expressly, intelligently, competently, and voluntarily made must be made in light of the unique circumstances of each case.

*Robbins v. State*, 635 P.2d 781, 784 (Wyo. 1981).

On the day of the trial, Appellant filed a "Waiver of Trial by Jury" which stated:

The Defendant, Courtney J. Van Riper, hereby waive[s]· trial by jury under W.R.Cr.P. 24(a). Defendant shows that he is unfamiliar with and has no knowledge of the procedure and rules for jury examination, peremptory challenges, alternates, selection, etc., and is unable to go forward.

The district judge held a hearing in chambers. He offered to assist Appellant with jury selection and explained the process of exercising peremptory challenges and challenging jurors for cause. This exchange followed:

THE COURT: Are you willing to waive it knowing all that, knowing that the court will help you in asking questions?

MR. VAN RIPER: I do waive my right to a jury. My waiver is in writing; you granted it.

THE COURT: Well, I just want to make sure that you understand that I'm allowing you to reinstate a jury, even though I allowed you to waive it.

The state is here to try to get a jury that's unbiased. I would assure you that I would assist you in that regard. But to be fair to you, I cannot help you with peremptory challenges.

Knowing that, what do you wish to do?

MR. VAN RIPER: Let's proceed with this thing.

THE COURT: Without a jury?

MR. VAN RIPER: With all dispatch.

The prosecutor did not object to a bench trial, and the district court granted Appellant's request to proceed. W.R.Cr.P. 23(a).

Appellant does not claim that he was incompetent to stand trial; he claims that he was not capable of conducting his trial. Appellant had prior experience in the criminal justice system, and he had pleaded guilty on his own in federal court in at least one other case. Under the circumstances of this case, Appellant was bound by his express waiver. *Robbins*, 635 P.2d at 784.

### RIGHT TO CONFRONT WITNESSES

At trial Appellant, suggesting that the salesman had written the letter to protect his job, cross-examined the salesman about the handwritten letter which was addressed to Tyrrell Chevrolet. The salesman denied that he had written the letter. In trying to impeach the salesman, Appellant attempted to elicit a handwriting exemplar from him. The prosecutor objected to Appellant's request, and the district court sustained the objection. Appellant asserts that the district court deprived him of his Sixth Amendment right to confront the witnesses against him when the district court denied his request to cross-examine the salesman by obtaining a handwriting exemplar from him.

"[T]he extent and manner of cross-examination are matters which are vested within the discretion of the trial court, and its ruling on such evidence will not be overturned in the absence of a clear abuse of discretion." *Grable v. State*, 649 P.2d 663, 673 (Wyo.1982) (citing *Nimmo v. State*, 603 P.2d 386 (Wyo. 1979)). *See also Delaware v. Van Arsdall,*

suppress which was accompanied by a motion to reduce bond so that Appellant would be able to pay the retainer fee. Appellant discharged the

attorney, and the district court did not rule on the motion to reduce bond.

475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").

 The district court's refusal to permit Appellant to elicit a handwriting exemplar from the salesman did not constitute an abuse of discretion. The district court admitted the handwritten statement which the salesman had given to the police when he reported that the car had been stolen. Even if the district court erred in making its ruling, the error was harmless because the district court had admitted the salesman's handwritten statement. Restrictions on the right to confront witnesses are subject to the harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 306–07, 111 S.Ct. 1246, 1262–63, 113 L.Ed.2d 302 (1991).

### MOTION TO SUPPRESS

 Appellant claimed that, when he exited the Tampa lounge prior to his arrest, he was immediately encircled by five officers, two of whom held drawn weapons. He also claimed that, within moments after the initial contact had been made with the deputies, he had requested to have consultation with counsel and that the deputies questioned him without advising him of his *Miranda* rights. Appellant contends that the district court erred when it failed to grant his motion to suppress the confession which he had made to the police because he had been physically seized without probable cause before he made the statement.

Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's

determination. The issue of law, whether an unreasonable search or seizure occurred in violation of constitutional rights, is reviewed de novo.

*Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994) (citations omitted).

"[S]tatements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will." *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Wilson,* 874 P.2d at 220 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). "Certain constraints on personal liberty that constitute 'seizures' for purposes of the Fourth Amendment may nonetheless be justified even though there is no showing of 'probable cause.' " *Florida v. Rodriguez,* 469 U.S. 1, 5, 105 S.Ct. 308, 310, 83 L.Ed.2d 165 (1984) (per curiam). "[An] investigatory stop ... requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime." *Wilson,* 874 P.2d at 220.

At the conclusion of the suppression hearing, the district court found:

THE COURT: ....

Now, with respect to the motion to suppress, first of all I find that—I have to make a decision as to the question of veracity. Who do I believe, the two officers or do I believe Mr. Van Riper? That's why I wanted to know about your background. It seems to me that the court will—as to the question of veracity, will accept the testimony of the two officers.

And based upon that, the court finds that you were given a proper Miranda warning in a timely fashion before any admissions were taken from you. And the

arrest in this case was based on probable cause. And any further statements you might have made at the police station, which I understand that the state might bring out in rebuttal, those statements were also taken in such a manner as to not violate any constitutional rights in this case.

So, therefore, the motion to suppress is denied.

Appellant's initial encounter with the police was consensual. *See Wilson*, 874 P.2d at 220. The manager of the lounge asked Appellant to go outside and meet with the police, and Appellant complied with the manager's request. Outside, one of the deputies asked to see Appellant's identification, and Appellant showed the deputy an altered pilot's license. The deputy informed Appellant of his *Miranda* rights.

It is not necessary for us to determine whether Appellant was subject to a Fourth Amendment "seizure" when he made his statement to the deputies. Whether Appellant was "seized" when he made his statement to the deputies is immaterial because the deputies had reason to suspect that Appellant had committed a crime. *See, e.g., Rodriguez*, 469 U.S. at 6, 105 S.Ct. at 311. Appellant had given the deputies an altered identification and suspicious information about where he was staying and what he was driving; the pilot's wings on Appellant's belt buckle matched the pilot's wings on the front license plate of the car; and the car's rear license plate belonged on a stolen vehicle. Because the deputies had reason to suspect that Appellant had stolen the car, Appellant was not subject to an illegal seizure when he made his statement to the deputies. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the district court did not err by admitting Appellant's statement.[3]

## FROZEN BANK ACCOUNT

■ After trial, the district court issued an order which froze Appellant's savings ac-count. Appellant alleges that the order violated 38 U.S.C. § 5301(a) (1991). Before the sentencing hearing, the district court issued an order which released the freeze. "We have many times held that we will dismiss a case when, pending appeal, an event occurs which renders a cause moot and makes a determination of the issues unnecessary." *Davidson v. Sherman*, 848 P.2d 1341, 1348 (Wyo.1993). Appellant's claim is moot, and we will not consider it.

## JURY COSTS

Appellant asserts that the district court improperly ordered him to pay jury costs. The State acknowledges that the district court erred. We agree and, therefore, set aside that portion of Appellant's sentence which ordered him to pay $360 in jury costs. *See King v. State*, 780 P.2d 943, 958 (Wyo. 1989); *Johnson v. State*, 532 P.2d 598, 601 (Wyo.1975); WYO.STAT. § 7–11–505 (Supp. 1993).

## ORAL SENTENCE VERSUS WRITTEN SENTENCE

Appellant claims that his rights to have due process and to confront the witnesses against him pursuant to the Sixth Amendment and the Fourteenth Amendment to the United States Constitution were violated because the written sentence altered the sentence which the district court had pronounced at the sentencing hearing.

"We have said that the record of judgment is not dispositive when it conflicts with the actual sentence imposed orally by the trial judge in open court." *Schuler v. State*, 668 P.2d 1333, 1341 (Wyo.1983) (citing *Lane v. State*, 663 P.2d 175 (Wyo.1983)).

At the sentencing hearing, the district court stated:

THE COURT: Okay. I'm going to make the following findings. I find that the amount of restitution owed is $1,000 to Tyrrell[ ] Chevrolet, plus $1,760 owed to the insurance company involved in this case.

---

**3.** Although in his brief Appellant cites *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (coerced confession) and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (involuntary custodial statements), he does not make a persuasive argument on the basis of either case that his confession should have been suppressed.

The costs for the witnesses, Court will impose those at $2,491; $360 for jurors. And there was another increment of costs.... I can't recall what that was now.

[THE PROSECUTOR]: Just the victim's comp fund, Your Honor.

THE COURT: Oh, that's right. $50 to the victim's comp fund.

. . . .

THE COURT: The Judgment of this Court will be, you are sentenced to a period of not less than six, nor more than nine years in the Wyoming State Penitentiary.

The district court's written sentence stated:

**IT IS HEREBY ORDERED** that COURTNEY VAN RIPER is guilty of the crime charged in the Information filed herein and that he be imprisoned and confined in the Wyoming Department of Corrections located at or near the city of Rawlins, Wyoming for a period of not less than six (6) years nor more than nine (9) years ...

. . . . .

**IT IS FURTHER ORDERED** that COURTNEY VAN RIPER shall make complete restitution to Tyrrell's Chev[ ]rolet in the amount of $1,000.00, Universal Underwriters in the amount of $1,760.00, Laramie County District Court Clerk's Office in the amount of $360.00, and State of Wyoming District Attorney's Office in the amount of $2,491.00 for the total sum of $5,611.00 for any items not returned or damage done as a result of this offense;

**IT IS FURTHER ORDERED** that COURTNEY VAN RIPER shall pay to the Victim's Compensation Fund ... the sum of $50.00 ...

The terms of the pronounced sentence and the written sentence do not conflict with each other; they are identical. *See, e.g., Schuler,* 668 P.2d at 1341. Appellant's claim, therefore, has no merit.

### PROSECUTOR'S COMMENT

 Appellant alleges that, because the prosecutor had used the term "career criminal" during the sentencing hearing, the district court relied upon materially false information when it imposed his sentence. "[A] sentence must be set aside if the trial court relied at least in part on 'misinformation of constitutional magnitude.'" *Zant v. Stephens,* 462 U.S. 862, 887 n. 23, 103 S.Ct. 2733, 2748 n. 23, 77 L.Ed.2d 235 (1983) (quoting *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972)). " '[T]he defendant [has] the burden to "establish that the sentencing judge in fact rested the sentence on false or improper premises." ' " *Mehring v. State,* 860 P.2d 1101, 1115 (Wyo.1993) (quoting *Johnson v. State,* 790 P.2d 231, 232 (Wyo.1990)).

At the sentencing hearing, Appellant was given an opportunity to comment on the probation officer's report of Appellant's prior offense history, and Appellant suggested several corrections. W.R.Cr.P. 32(c)(1). At the hearing, the prosecutor stated: "I think by the nature of [Appellant's] prior criminal record, if we were in the federal system he would be a career criminal." Appellant did not object to the prosecutor's use of the term "career criminal." Appellant has failed to demonstrate that the sentencing court relied upon the prosecutor's use of the term "career criminal." The prosecutor's comment was at most "a poor choice of words." *Pote v. State,* 695 P.2d 617, 630 (Wyo.1985).

### CONCLUSION

We set aside that portion of Appellant's sentence which ordered him to pay jury costs. We have found no other error in the proceedings below.

Affirmed as modified.