2003 WY 14

**Joseph MAY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–40.

Supreme Court of Wyoming.

Jan. 30, 2003.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel, and Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Appellant. Argument by Mr. Roden.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee. Argument by Ms. Baker.

Before HILL, C.J., and GOLDEN,

LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] May appeals his convictions for aggravated assault and battery with a deadly weapon and aggravated burglary arising from his entry into the home of his wife's parents and his stabbing of two people. May claims that his aggravated burglary conviction cannot stand as the jury was instructed in the alternative and there was insufficient evidence to support one of the alternatives. May further asserts that his Sixth Amendment right to counsel was violated.

[¶2] We reverse in part and affirm in part.

### ISSUES

[¶3] May states the issues as follows:

I. Whether there was insufficient evidence to support appellant's aggravated burglary conviction.

II. Whether appellant's state and federal constitutional rights not to be placed twice in jeopardy for the same offense were violated when the district court allowed the prosecution to use two charges appellant was acquitted of as evidence that appellant had committed the crime of aggravated burglary.

III. Whether the trial court erred in refusing to appoint different standby counsel for appellant, resulting in a violation of appellant's Sixth Amendment right to counsel.

IV. Whether appellant's right to effective assistance of counsel during a critical stage in the proceeding was violated because of a conflict of interest.

V. Whether the district court abused its discretion in failing to ensure appellant's access to adequate legal materials.

### FACTS

[¶4] May and his wife, Shannon, separated around December of 1997. After the separation, May was living and working in Colorado while Shannon and the couple's son were living in Casper with Shannon's par-

ents, the Chadwicks. At the end of April 1998, May traveled to Casper for work-related reasons. While in Casper, May saw Shannon only briefly but did have a visitation with the couple's son.

[¶5] May spent the evening of May 6 and early morning hours of May 7, 1998, out with friends visiting a couple bars. At the conclusion of his activities, May drove to the Chadwicks' home just east of Casper. When May arrived at the Chadwicks' home at approximately 3:30 a.m., he entered the home and made his way to Shannon's room. He entered the room and approached the bed where Shannon was sleeping.

[¶6] Shortly after May entered the room, David Buss was awakened from his sleep in the bed next to Shannon by pain in his shoulder. When Buss felt blood under his arm, he asked Shannon to turn on the light. With the light on, Buss saw May beside the bed holding a Swiss army knife in his hand. Buss said, "You stabbed me." May replied, "I didn't stab you." Buss said, "You stabbed me under the arm." May then approached Buss, stabbed him in the chest and said, "There, now I stabbed you."

[¶7] Buss jumped up from the bed, made his way to the door and tried to open it. May came after him, and Buss and May struggled. Buss yelled for Shannon's father, Mr. Chadwick. Awakened by the sound of yelling, Chadwick ran into his daughter's room. He reached for May and was cut under the left arm. Chadwick grabbed May's arm, twisted it behind him and held him up against the wall. Chadwick told Shannon to call the police, which she did. In the meantime, May struggled loose from Chadwick's hold and escaped through the balcony door. He leaped off the balcony onto the lawn and ran off into the darkness.

[¶8] Later that morning, a deputy sheriff patrolling the east side of Casper apprehended May when he noticed a vehicle matching the description of May's car. When arrested, May's clothes were stained with blood, and a red Swiss army knife was found in his pocket. May was charged with three counts of aggravated assault and battery and one count of aggravated burglary.

---

* Chief Justice at time of oral argument.

Counsel was appointed on May 11, 1998. May had concerns about his appointed counsel and requested to proceed pro se. A hearing was held on the motion on January 21. Following the hearing, the court entered an order allowing May to proceed pro se and ordering appointed counsel to act as standby counsel.

[¶ 9] On February 16, May filed motions requesting greater access to the law library in order to prepare his defense and requesting appointment of alternate standby counsel. A hearing was held on the motions, at which time the court denied the motion for substitute counsel and denied, without prejudice, the motion concerning library access. In March, May filed additional motions in which he claimed he was being denied access to the law library. Following a hearing, the court denied the motions, and the case proceeded to trial on April 12, 1999.

[¶ 10] On April 14, the jury returned a verdict finding May guilty of one count of aggravated assault and battery for stabbing Buss and not guilty of the remaining two counts of aggravated assault and battery. The jury was not able to reach a unanimous verdict as to the charge of aggravated burglary, and the court declared a mistrial on that charge. A second trial began on May 17, 1999. This time the jury found May guilty of aggravated burglary. May was sentenced to a term of imprisonment in the Wyoming State Penitentiary of eleven to fifteen years on the aggravated burglary charge to run consecutively with a sentence of six to ten years on the aggravated assault and battery conviction. May timely appealed on August 13, 1999.

## DISCUSSION

### Sufficiency of the Evidence

[¶ 11] In reviewing May's sufficiency of the evidence claim, we utilize our usual standard:

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo.1991) (quoting *Munson v. State*, 770 P.2d 1093, 1095 (Wyo.1989)). We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. *Bloomquist v. State*, 914 P.2d 812, 824 (Wyo.1996). We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. *Id.* (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.* (citing *Hodges v. State*, 904 P.2d 334, 339 (Wyo. 1995)).

*Williams v. State*, 986 P.2d 855, 857 (Wyo. 1999).

[¶ 12] May was convicted of aggravated burglary under Wyo. Stat. Ann. § 6-3-301 (LexisNexis 2001).[1] In his first claim of error, May contends that his conviction under the statute cannot stand because it is not clear on what ground the jury based its verdict of guilty to the charge of aggravated burglary. Specifically, May asserts that to the extent the State did not specify which it was relying on, either the intent to commit larceny or the intent to commit a felony, the State is required to provide sufficient evidence of both. As can be seen by our recent decision, *Tanner v. State*, 2002 WY 170, 57

1. Wyo. Stat. Ann § 6-3-301 (LexisNexis 2001) provides in relevant part:

 (a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.
 . . .

 (c) Aggravated burglary is a felony punishable by . . . if, in the course of committing the crime of burglary, the person:
 (i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;
 (ii) Knowingly or recklessly inflicts bodily injury on anyone; or
 (iii) Attempts to inflict bodily injury on anyone.

P.3d 1242 (Wyo.2002), we agree.[2]

[¶ 13] Much like the appellant in *Tanner*, May cites *Bush v. State*, 908 P.2d 963 (Wyo. 1995) to support his argument. In *Bush*, we said a "verdict must be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 966 (citations omitted). Finding insufficient evidence to support one of the grounds with which the State had charged Bush, we reversed his conviction. *Id.* at 968.

 [¶ 14] In *Bush*, a jury convicted the defendant of burglary and felony accessory. Neither the information, the jury instruction defining the elements of burglary, nor the general verdict form specified the underlying crime (larceny or a felony) supporting the burglary charge. Instead, the information and jury instruction generically stated that the defendant entered the building without authority "with intent to commit larceny or a felony therein." The court said:

> Count I of the Information, Jury Instruction No. 10, and the general verdict form all fail to particularize the underlying crime that supports the burglary conviction. It is impossible to tell whether the jury relied on the crime of felony accessory or the crime of larceny when it convicted Bush of burglary. Therefore, the burglary conviction will stand, only if evidence in the record proves that Bush entered [the] apartment with the intent to commit both a felony **and** the crime of larceny. *Price v. State*, 807 P.2d 909, 912 (Wyo.1991).

*Bush*, 908 P.2d at 967. Stating these principles in a slightly different manner, "*if* a jury is instructed in the alternative, and *if* that jury returns a general verdict of guilty, then upon appellate review of the sufficiency of the evidence to support the conviction, the record must support **each** alternative beyond a reasonable doubt." *Tanner*, ¶ 15.

[¶ 15] Just as it did in *Tanner*, the State argues the record shows that the State was proceeding on one theory, so there is no violation of the principles established in *Bush*. In this case, the State's "one theory" is that May entered the residence with the intent to commit aggravated assault on one of the persons in the residence. May's appellate brief appears to concede that the State's case was based on aggravated assault as the underlying felony to prove burglary. However, when resolving this issue, we review the information, the jury instructions, and the form of the jury's verdict, not the argument of the parties. *Tanner*, ¶ 14.

[¶ 16] In this case, the Amended Information charged that:

> Joseph May late of the County aforesaid, on or about the 7th day of May, 1998, in the County of Natrona, in the State of Wyoming, did unlawfully and without authority, enter or remain in a building, occupied structure, or separately secured or occupied portion thereof with intent to commit larceny or a felony therein and was in the course of committing the crime of burglary armed with or used a deadly weapon, or did knowingly or recklessly inflict bodily injury on any one, or did attempt to inflict bodily injury on any one in violation of W.S. § 6–3–301(a)(c) contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming.

Just as we saw in *Tanner*, the Amended Information was phrased in the entire language of the statute itself. The information contains no indication of the circumstances related to the particular charge.

[¶ 17] Recently, in our supervisory role, we pointed out a recurring problem in prosecutions for felony interference where the defendant was being charged with the entire language of the statute with no differentiation between the two versions of the offense. Regarding this problem, we said: "By failing to specify, either through charging documents or the jury instructions, the State was faced with the more difficult task of proving both crimes at trial. As a further result, now, on appeal, the conviction must be sus-

---

2. The issues in this appeal are strikingly similar to the issues we recently addressed in *Tanner;* as such our discussion in this case will mirror in many respects the discussion set forth in that decision. We would note that May's appeal was submitted before our *Tanner* opinion was published.

tained on both theories." *King v. State*, 2002 WY 27, ¶ 24, 40 P.3d 700, ¶ 24 (Wyo.2002) (citing *Bush v. State*, 908 P.2d at 966). This statement applies with equal force when a person is charged with the entire language of the burglary statute as was May.

[¶ 18] As indicated above, we also look to the jury instructions to determine whether the State specified the crime on which it is relying. A thorough review of the jury instructions in this case convinces us that the jury was, in fact, instructed in the alternative with no particularization of the underlying intent to support the burglary conviction. Instruction No. 4 informed the jury of the charges against May and recited exactly the language of the Amended Information. Instruction No. 5 reads in relevant part:

> You are instructed that the elements of the crime of Aggravated Burglary, as charged in this case, are:
>
> 1. On or about the 7th day of May, 1998
>
> 2. In Natrona County, Wyoming
>
> 3. The Defendant, Joseph May
>
> 4. While in the course of committing the crime of burglary
>
> 5. Was armed with or became armed with or used a deadly weapon or knowingly or recklessly inflicted or attempted to inflict bodily injury on another person.[3]

The form of Instruction No. 5 requires that the jury then be instructed as to what constitutes the crime of burglary. To this end, Instruction No. 7 states: "You are instructed that 'Burglary' means the act of entering or remaining in a building, occupied structure or vehicle or separately secured or occupied portion thereof, with *intent to commit larceny or a felony therein*." (emphasis added). As was the case in *Tanner*, such instructions do not specify the underlying intent upon which the State is proceeding. Instruction No. 7 is an accurate definition of burglary, but the instruction does nothing to indicate the circumstances of this particular case.

The jury must, at some point, still be instructed as to the underlying intent to support the burglary charge or sufficient evidence of both must be presented.

[¶ 19] The jury returned a guilty verdict on the aggravated burglary charge, so clearly it found all the elements listed in Instruction No. 5. The fifth element of Instruction No. 5 does give us pause, and we must determine whether a jury finding of the fifth element of Instruction No. 5 was equivalent to a finding of the underlying felony of aggravated assault and battery. In this case, we would say no. A person could enter a home armed with a deadly weapon but still only have the intent to commit larceny not aggravated assault. Although Buss and Chadwick were in fact injured, because the fifth element of Instruction No. 5 used alternatives, we do not know on what grounds the jury based its finding of the existence of this element. It may simply have been that he was armed with a deadly weapon, which is not equivalent to aggravated assault.

[¶ 20] The State points to two instructions to support its contention that the jury was only instructed on intent to commit a felony therein. Instruction No. 9 states: "You are instructed that in the State of Wyoming, the crime of Aggravated Assault and Battery is a felony crime." Instruction No. 16 reads:

> You are instructed that the elements of the crime of Burglary *as a lesser offense of the crime of Aggravated Burglary* charged in this case, are:
>
> 1. On or about the 7th day of May, 1998
>
> 2. In Natrona County, Wyoming
>
> 3. The Defendant, Joseph May
>
> 4. Without authority
>
> 5. Entered or remained in a building, occupied structure, or vehicle or separately secured or occupied portion of a building, occupied structure or vehicle.[4]

---

**3.** We would note that this element is also being instructed in the alternative and would require sufficient evidence of each alternative. *See* W.Cr.P.J.I. 33.01C. However, as our discussion of the alternate theories of intent is dispositive,

we decline to address whether sufficient evidence of each alternative existed.

**4.** See fn. 3 and W.Cr.P.J.I. 33.01A.

6. With intent to commit the felony of Aggravated Assault and Battery.

(Emphasis added.) Instruction No. 9 merely informs the jury that aggravated assault and battery is a felony, it does nothing to particularize the theory of intent the State is relying on in this specific instance. Instruction No. 16 is more helpful to the State's argument, but the argument still fails. Such an argument could possibly be persuasive if the jury had convicted May of the lesser included offense of burglary, but it did not. Instead, May was convicted of *aggravated burglary* for which the instruction used alternate theories of intent.

[¶ 21] We also consider Instruction No. 18, the instruction on self-induced intoxication. This instruction once again muddied the waters by stating in relevant part, "if the defendant was intoxicated to such a degree that he was unable to formulate the intention to commit *larceny or a felony* at the time he entered the building or occupied structure without authority" and "whether the defendant possessed the mental ability to form the intention to commit *the larceny or felony* at the time he entered the building." Once again, the jury was exposed to either theory. Although not an elements instruction, this instruction certainly gives the impression that either larceny or a felony can be used as the underlying intent for the burglary conviction.

■ [¶ 22] Charging the defendant and instructing as it did, the State gave the jury license to decide either way. "Submitting claims to the jury which have no foundation in the evidence allows the jury to engage in conjecture or to speculate as to the defendant's guilt." *Fife v. State,* 676 P.2d 565, 569 (Wyo.1984). With only the general verdict form guiding us, we cannot say on which grounds the jury found. It is possible that the jury based its verdict on the charges properly in the case, but we cannot conclusively presume it did. We do not know that the jury found its verdict on the State's "one theory" or that the jury considered the lesser-included instruction as a clarification to the other burglary instruction. What we do know is that the verdict form read:

We the jury, duly empaneled and sworn to try the above entitled cause, do find as follows:

1. As to the charge of Aggravated Burglary in the *Amended Information,* we find the Defendant, Joseph May . . .

(Emphasis added.) The amended information used the entire language of the statute itself. Just as in *Bush* and *Tanner,* due to the general verdict, we are left to speculate on which ground the jury found May guilty of burglary. Of course, as we stated in *Fife v. State,* 676 P.2d at 568, "If both theories of intent submitted to the jury were sufficiently supported by the evidence, we could uphold the general verdict on the aggravated burglary charge."

[¶ 23] We, therefore, now turn to the record to see whether both intent to commit a larceny and intent to commit a felony were supported by sufficient evidence. The evidence showed that May went to the Chadwick home armed with a Swiss army knife, entered without authority, broke into the room where he knew Shannon was likely to be, and stabbed her companion in the chest. The evidence also showed that a few days before these events, May saw Shannon with Buss and reacted angrily to her being with him. In addition, the evidence showed that two days before he broke into the Chadwick home, May appeared on the doorstep of Shannon's friend in an agitated and angry state and inquired as to the whereabouts of Shannon and Buss. Testimony also showed that sometime in the early morning hours of May 7, May called a friend and asked if he had a gun, saying that he was going to go kill Shannon, and her parents if they got in the way. Viewing this evidence in the light most favorable to the State, we find it sufficient to support a jury's finding of guilty on the aggravated burglary charge based on the intent to commit the felony of aggravated assault and battery.

■ [¶ 24] Sufficient evidence that May entered with the intent to commit larceny is not reflected in the record. The majority of the State's witnesses testified only about the incident itself and circumstances that would indicate May's intent to harm someone in the house. No evidence was presented that any-

thing was taken from the Chadwick home. Testimony did establish that May's entry into the house was unauthorized and that he did have knowledge of the house. However, in Wyoming, no automatic inference of intent to steal arises with unauthorized entry by a person with knowledge of the contents of the building. *Bush,* 908 P.2d at 967. One of the State's witnesses did testify that May had little money and had pawned some items to pay for necessities. May himself testified that money was tight for him. However, this evidence cannot be considered sufficient evidence of the intent to commit larceny.

[¶ 25] Because there was insufficient evidence of the intent to commit larceny, we cannot uphold the general jury verdict. As discussed in *Tanner,* the appropriate remedy for such errors is for us to direct the district court to enter a judgment of acquittal on the burglary charge because jeopardy attaches when a conviction is overturned due to the insufficiency of · evidence. *Tanner* at ¶ 17 (citing *Longstreth v. State,* 890 P.2d 551, 553 (Wyo.1995) and *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)). We, therefore, must reverse May's conviction for aggravated burglary.

[¶ 26] It is with the same frustration we expressed in *Tanner* that we reverse May's conviction. *Tanner* at ¶ 18. The error occurring in this case is easily avoidable, beginning with better charging documents. W.R.Cr.P 3(b)(2) states, "The information shall be a ***plain, concise and definite*** written statement of the ***essential facts*** constituting the offense charged." (emphasis added). We recognize that when originally charging a person with a crime, the exact facts and circumstances surrounding the crime may not be known. But we also recognize that the rule allows the information to be amended. W.R.Cr.P. 3(e). Surely closer to trial when all the discovery and investigation is complete the State has a better idea of what it will be alleging and could amend the information to reflect such a charge.

[¶ 27] Following that, instructions to the jury need to be carefully crafted. For instance, the instructions for burglary and aggravated burglary appear in this case to be taken from the Wyoming Criminal Pattern Jury Instructions. The error could be avoided by simply following the use note that states: "Use appropriate bracketed language in element...." W.Cr.P.J.I. 33.01C and 33.01A. The introduction to the pattern instructions states that some of the instructions contain language in brackets, which signifies that the language in adjoining sets of brackets is meant to be used in the alternative.[5] The instruction should only include the appropriate language that fits the circumstances of the crime charged and the evidence introduced not include every phrase within the brackets.

[¶ 28] We are not suggesting that the State must only charge one single theory. We are, however, saying that if the State is going to present two alternatives and instruct in the alternative, the State is required to provide sufficient evidence of both or utilize a special interrogatory verdict form requiring the jury to indicate which alternative formed the basis for its finding of guilt. Our holdings in *Bush, Tanner,* and now this case, should make it clear more precise charging and jury instructions are required. Because we believe it accurately reflects the state of our law and properly advises practitioners, we would once again direct attention to Professor Theodore Lauer's explanation in his article, *Burglary in Wyoming,* XXXII Land & Water L.Rev. 721, 780–81 (1997) wherein he states:

It is very important that only those alternative bracketed terms in the foregoing instruction which are supported by the evidence in the case be included in the instruction given to the jury. In too many instances, the elements instruction given to the jury simply restates the content of the information, setting forth, for example, that the defendant "entered or remained in a building, occupied structure or vehicle or

---

5. We note that Instruction No. 5 was taken from the W.Cr.P.J.I 33.01C that referenced 33.01D as a definition of burglary. But, as discussed above, at some point the jury must be instructed as to the underlying theory of intent or sufficient

evidence of both must be presented. Perhaps to avoid this problem in the future, the better instruction is the second option for 33.01C that combines the elements of burglary and aggravated burglary into one instruction.

separately secured or occupied portion thereof," and "with intent to commit larceny or a felony therein." *Such instructions are inadequate, and should lead to reversal of convictions. The instruction must conform to the crime as charged in the information, and must also conform to the evidence which has been introduced.*

(Emphasis added.)

[¶ 29] May makes other arguments connected to his conviction for aggravated burglary such as: to support a conviction for aggravated burglary the charging document, jury instructions and verdict form must identify specifically the individual whom the defendant intended to injure and the conviction for aggravated burglary in the second trial must be reversed if in reaching its verdict the jury relied upon evidence of a crime for which he was acquitted in the first trial. We need not address these issues, as our decision on May's first contention is ultimately determinative. We further decline to address May's second issue, as our resolution of the first disposes of the aggravated burglary conviction. We will, however, address his third, fourth, and fifth issues because they relate to his conviction for aggravated assault and battery as well, which is unaffected by our previous discussion.

### Appointment of Standby Counsel

[¶ 30] We review May's claims regarding the district court's refusal to appoint different standby counsel under an abuse of discretion standard. "While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an abuse of discretion is shown." *Allen v. State,* 2002 WY 48, ¶ 27, 43 P.3d 551, ¶ 27 (Wyo.2002) (quoting *Bell v. State,* 994 P.2d 947, 951 (Wyo.2000)). May argues that his Sixth Amendment right to counsel was violated when the trial court refused to appoint new standby counsel to replace the attorney originally appointed to represent him.

[¶ 31] After May's arrest in May of 1998, an attorney from the public defender's office was appointed to represent him. On January 11, 1999, May sent a letter to the trial judge stating that he had seen appointed counsel only twice since his incarceration eight months earlier. May also stated in the letter that counsel had failed to inform him about court dates, refused to accept his phone calls, and failed to respond to his letters. May's letter to the court was followed a few days later by a motion requesting to proceed with the trial pro se. On January 21, a hearing was held on May's motion. Appointed counsel was not present due to an automobile accident, and another attorney from the public defender's office appeared on May's behalf.

[¶ 32] During the hearing, the trial court inquired into May's understanding of the implications of representing himself and reviewed with May the charges filed against him and possible penalties. The court also discussed with May the complexities of his case and risks involved in self representation and recommended that May proceed with counsel. Despite the court's recommendation, May stated that he wished to proceed pro se. May also asked the court to appoint standby counsel other than his appointed public defender. The court stated that standby counsel would be required and that generally the selection of counsel is not left to the defendant. The court granted May's motion to proceed pro se but indicated that standby counsel would be the attorney already appointed to represent May. The court directed May to contact that attorney to discuss his concerns and told May that if another hearing was needed to address the issue, the court would consider it. May responded that all he could do to contact counsel was write her a letter and that she did not respond to his letters and phone calls. The attorney from the public defender's office indicated he, too, would contact May's attorney. Consistent with the court's rulings at the hearing, an order was entered on January 26, 1999, granting the request to proceed pro se with standby counsel to be present to assist at trial.

[¶ 33] On February 16, 1999, May filed a motion to dismiss standby counsel and for appointment of other counsel. In support of the motion, May asserted that he and appointed counsel had been unable to establish

an amenable relationship. A hearing was held on the motion on February 18, 1999, at which time May asserted that appointed counsel had hardly spoken to him since his arrest and they had not established any relationship. The court reminded May that he had asked to proceed pro se, that he was responsible for representing himself at trial, and that the only function of standby counsel would be to answer questions, assist with legal technicalities, and provide minimal guidance where needed. Finding no basis for concluding that appointed counsel would be unable to provide such guidance, the court denied May's motion. May proceeded to trial on April 12 with appointed standby counsel present throughout all of the proceedings.

[¶ 34] Citing *United States v. Anderson*, 189 F.3d 1201, 1210 (10th Cir. 1999), May argues that his right to counsel was violated because the trial court in this case failed to fulfill its duty to inquire into his reasons for requesting substitute counsel. The constitutional right to have counsel appointed does not include a right to demand that a particular attorney be appointed by the court. *Irvin v. State*, 584 P.2d 1068, 1070 (Wyo.1978). The same rule applies where a defendant asks for the substitution of a particular attorney. *Id.*

While a trial court has the power in its discretion to appoint substitute counsel, its refusal to do so is not error unless an abuse of discretion is shown. A factual showing of good cause for the appointment of substitute counsel is essential to the demonstration of an abuse of discretion, and good cause is to be found in incompetence, commitment to a position or an interest which would conflict with the furnishing of an effective defense to the accused, or other good reason to conclude that appointed counsel is unable to furnish effective assistance.

*Id.* at 1071. Trial courts are under a duty to make formal inquiry into the defendant's reasons for dissatisfaction with present counsel when substitution of counsel is requested. *Johnson v. Gibson*, 169 F.3d 1239, 1254 (10th Cir.1999).

[¶ 35] This case is similar to *Bell v. State*, 994 P.2d 947, 951 (Wyo.2000),

wherein the defendant and counsel had differing opinions regarding case strategy and had difficulty communicating. Citing *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), we said in *Bell* that the Sixth Amendment does not guarantee a meaningful relationship with appointed defense counsel. Rather, the purpose of providing assistance of counsel is to ensure that criminal defendants receive a fair trial. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer. *Id.*

[¶ 36] Once May asserted his right to represent himself, the court had no duty to appoint counsel for him. *Van Riper v. State*, 882 P.2d 230, 235 (Wyo.1994). The appointment of standby counsel is not mandatory; standby counsel is appointed to a defendant simply through the goodwill of the trial judge. *Id.* We have held that failure to appoint standby counsel is not an abuse of discretion. *Id.* We, therefore, fail to see how refusing to appoint alternate standby counsel could be an abuse of discretion.

[¶ 37] Applying these principles, we are unable to find that the trial court abused its discretion in denying May's motions for substitute standby counsel. The issue of substitute counsel was addressed by the trial court, and by May, at two separate hearings. May was heard on the issue of his dissatisfaction with appointed counsel. After discussing the matter with May and appointed counsel, the trial court confirmed the appointment of standby counsel. In doing so, the court reminded May of his right to retain private counsel, to proceed entirely on his own, or to make use of standby counsel to assist him during the trial. Upon May's motions for substitute counsel, the trial court concluded, based upon all the facts and circumstances before it, that appointing a different attorney to act as standby counsel was not warranted. Under these circumstances, we find no abuse of discretion in the denial of May's motions for appointment of substitute standby counsel.

## Effective Assistance of Counsel

 [¶ 38] May contends that his Sixth Amendment right to counsel was violated when a public defender other than the one appointed to represent him appeared at the January 21 hearing on his motion to proceed pro se. May claims that the public defender had a conflict of interest because he worked in the public defender's office and a former employee of that office had a relationship with one of the victims of May's alleged offenses.

[¶ 39] At the January 21 hearing, as the court was addressing with May his decision to represent himself, May made known that he wished to have different standby counsel appointed. The court asked May to consult with appointed counsel about his concerns and also requested the public defender present at the hearing communicate with appointed counsel about May's concerns. The public defender mentioned the potential conflict within the public defender's office and told the court that appointed counsel was selected in order to avoid that conflict because she did not have an office in the public defender's office. The attorney also indicated that it was his understanding that a personality conflict existed between May and appointed counsel but that he did not believe it rose to the level that appointed counsel would be unable to assist as standby counsel in this case. Beyond those comments made at the January 21 hearing, that public defender had no further involvement in May's case. From that point forward, appointed counsel appeared as standby counsel for May. May contends that the attorney's limited appearance and comments at the January 21 hearing violated his right to effective assistance of counsel given the potential conflict of the public defender's office.

 [¶ 40] The right to counsel is guaranteed by the Sixth Amendment to the Constitution of the United States and is applicable to the states by virtue of the Fourteenth Amendment. In addition, it is specifically articulated in article 1, § 10, of the Constitution of the State of Wyoming: "In all criminal prosecutions the accused shall have the right to defend in person and by counsel. . . ." This right to counsel includes that the assistance of counsel be effective. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Shongutsie v. State,* 827 P.2d 361, 364 (Wyo.1992). The right to effective counsel encompasses the correlative rights that counsel be reasonably competent and that counsel be free from conflicts of interest. *Shongutsie,* at 364.

 [¶ 41] Co-existing with a defendant's right to counsel is the right to waive representation by an attorney and elect to proceed pro se.

> A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. However, to be valid, the trial judge must ensure that the waiver of counsel is "an intentional relinquishment or abandonment of a known right or privilege." Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se.

*Van Riper v. State,* 882 P.2d at 234 (citations omitted).

[¶ 42] May makes no claim of error relating to his decision to waive his right to counsel and represent himself. He does not claim, for example, that the trial court failed to properly inquire into his decision to proceed pro se or that his waiver was done without knowledge of the risks of appearing without counsel. May claims only that his right to counsel was violated when a public defender made a limited appearance on his behalf despite the potential conflict within his office.

[¶ 43] We find no violation of May's right to effective assistance of counsel. In reaching that result, we note that once May waived his right to counsel and elected to proceed pro se, his claim of ineffective assistance is of questionable validity in the absence of a clear showing of prejudice. Additionally, once May invoked his right to self-representation, the court appointed standby counsel to assist him. The fact that the court required standby counsel to be present

to assist May should not give rise to an ineffective assistance claim in the absence of a clear showing of prejudice. May has made no showing of prejudice.

[¶ 44] Finally, May raised no objection at the trial level, during the January 21 hearing, or at anytime thereafter to the appearance by the attorney from the public defender's office. Absent such an objection, May must show that an actual conflict of interest adversely affected his lawyer's performance for prejudice to be presumed. *Sorensen v. State*, 6 P.3d 657, 663 (Wyo.2000). May has made no showing of an actual conflict of interest nor has he shown any prejudice resulting from any such conflict. Under these circumstances, we find no denial of his Sixth Amendment right to counsel.

### Access to Legal Materials

[¶ 45] May's final contention is that the trial court abused its discretion in not requiring the Natrona County Detention Center to provide greater access to the law library and legal materials in order to prepare an adequate defense. Specifically, May contends that his access to the library was on a very limited basis, inmates who were not getting ready for trial were allowed more time in the library than he was, access to the library was granted at unreasonable times, and there were times when he was not allowed to use the library at all because it was being used for some other purpose. May asserts that the trial court abused its discretion by not ordering the detention center to allow him access to the library a set number of hours per week at reasonable times.

[¶ 46] When a defendant makes a decision to manage his own case, he relinquishes many of the traditional benefits associated with his right to counsel. *Jennings v. State*, 4 P.3d 915, 919 (Wyo.2000). In this case, over the trial court's warnings concerning the risks of proceeding pro se and its repeated recommendation that he have legal representation, May affirmatively invoked his right to proceed pro se.

[¶ 47] Additionally, in the months leading up to the trial, two continuances were granted by the court, one at the State's request and one on a motion by May which he filed expressly in order to gain more time to prepare his defense. Both continuances were granted after May elected to proceed pro se, giving him extra time to prepare for trial. At the time May filed his motion on February 16, the trial was scheduled to begin on February 22. By virtue of the order granting the continuance, the trial was rescheduled for April 12, giving May seven additional weeks to prepare his case.

[¶ 48] At the February 18 hearing on May's motion for more access to the library, the trial court specifically invited May to repetition the court and delineate specifics concerning his denial of access claim. On March 1, May filed a motion to dismiss for denial of due process in which he again asserted, without specifics, that he was being denied access to legal materials. That motion was followed on March 10 by another motion in which May asserted that he had only been able to do three hours of research in the preceding month. Another motion followed on March 19 in which May alleged that he was awakened at 6:40 one morning and told that he could use the library. In this last motion, May alternatively sought dismissal of the charges against him, a second continuance, or an order requiring the detention center to allow him access to the library one hour per day between the hours of 8:00 a.m. and 9:00 p.m. excluding mealtimes.

[¶ 49] A hearing was held on March 23 at which time the motions were denied on the ground that May failed to provide documentary evidence showing that he had made demand for more time in the library and that any such demands were denied. In denying the motions, the court urged May to make his demands for use of the library in writing and to utilize standby counsel to assist him in gaining access. The court also indicated that May could re-file his motions along with documentary support showing specific violations.

[¶ 50] Nothing further appears in the record concerning May's allegations that he was denied access to legal materials. The trial began as scheduled on April 12 at which time the court asked May whether he was ready to proceed with his defense and May responded that he was. Thereafter, in the

course of the two trials that followed, May made no further claim that a denial of access to legal materials hampered his ability to present his defense. Moreover, his performance during the trials demonstrated that he was adequately prepared. Under these circumstances, we find no error in the court's rulings in this regard.

### CONCLUSION

[¶ 51] In accordance with the foregoing discussion, we affirm May's conviction for aggravated assault and battery. We reverse May's conviction for aggravated burglary and vacate the judgment and sentence entered by the district court. We remand this matter to the district court for entry of judgment of acquittal on the aggravated burglary charge against May.