[Cite as *State v. Cook*, 2020-Ohio-432.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                         CASE NO. 5-19-26

     v.

MATTHEW G. COOK,                            O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2018 CR 00125

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 10, 2020

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Lora L. Manon* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Matthew G. Cook ("Cook"), brings this appeal from the July 24, 2019, judgment of the Hancock County Common Pleas Court sentencing him to twenty-four months in prison after Cook pled no contest to, and was convicted of, Aggravated Possession of Drugs in violation of R.C. 2925.11(A), a felony of the third degree, and Possession of Marijuana in violation of R.C. 2925.11(A), a felony of the fifth degree. On appeal, Cook argues that the trial court erred by overruling his suppression motion, and that the trial court erred by declining to waive a mandatory fine.

*Background*

{¶2} On or about August 22, 2017, Cook posted pictures on Facebook of a gloved hand holding palm-sized suspected "Psilocyn" mushrooms. There was a written post accompanying the pictures that stated, "I'm probably gonna catch a lot of shit for this, but I'm doing this to prove a point because I have faith, and I understand my purpose."[1] (State's Ex. 4).

{¶3} At the time of the posting, Cook was on post-release control for an unrelated crime, subjecting him to warrantless searches. Officer Benjamin Bowers of the Adult Parole Authority monitored Cook's Facebook page and observed the post related to mushrooms. Afterward, Officer Bowers went to Cook's residence

---

[1] The post continued, quoting various bible verses.

with the intention of searching for illegal, psychedelic mushrooms. On the way over to Cook's residence, Officer Bowers called for assistance with the search.

{¶4} At Cook's residence, Officer Bowers asked Cook where the mushrooms were and Cook directed him toward a bedroom at the rear of the residence. When he reached the door, Officer Bowers observed a sign posted on the door stating, "Stop!! Do Not Enter!! Property of the Church of Life Protected Under the 1st Amendment[.] [S]ervant of the Church only!!" (State's Ex. 10). Officer Bowers located what he felt was a significant illegal mushroom manufacturing operation in Cook's residence. He then called the Findlay City Police Department for additional assistance due to fear of airborne spores or other chemicals.

{¶5} Lieutenant Ryan Doe of the Findlay City Police Department responded to the scene. He acquired gloves, an oxygen tank, and "booties" from the fire department, which had also responded due to potential hazmat issues. Lieutenant Doe then searched Cook's residence more thoroughly while wearing a self-contained breathing apparatus.

{¶6} Lieutenant Doe found mushrooms in various states of cultivation throughout the house and in a detached garage. Lieutenant Doe also found various components for growing mushrooms such as chemicals in the kitchen refrigerator and fertilizer in a separate refrigerator in the detached garage. In addition, he located a dehydrator with drying mushrooms in the garage. The dehydrator contained a

"warning" that it was "protected" under the First Amendment, as did the refrigerator, which stated "Do Not Enter!! Protected under the 1st Amendment & Religious Freedom Restoration Act 1993." (State's Ex. 17).

{¶7} In one of the bedrooms Lieutenant Doe found two pressure cookers, mason jars, and numerous plastic "totes of mushrooms growing inside."[2] In addition to illegal mushrooms, Lieutenant Doe discovered marijuana in three separate locations in the residence.

{¶8} The scene was photographed and the evidence was collected. Cook made statements at the scene that the officers were violating his First Amendment rights, and that the mushrooms were part of his religion.

{¶9} On April 10, 2018, Cook was indicted for Illegal Manufacture of Drugs, specifically Psilocyn, a Schedule I controlled substance, in violation of R.C. 2925.04(A), a felony of the second degree, Aggravated Possession of Drugs, specifically Psilocyn, in violation of R.C. 2925.11(A), a felony of the third degree, and Possession of Marijuana in violation of R.C. 2925.11(A), a felony of the fifth degree.

{¶10} On May 14, 2018, Cook, acting *pro se* at the time, filed a motion to dismiss the indictment arguing that the indictment violated his religious rights. He also filed a separate motion to suppress on that same date, arguing the evidence was

---

[2] A separate officer actually testified to the terminology of "totes of mushrooms." (Tr. at 82).

collected in violation of numerous rights, including his religious rights. Cook contended, *inter alia*, that he used mushrooms and marijuana for religious purposes and thus they were protected under the First Amendment. An attorney was subsequently appointed for Cook as he was indigent, and Cook pled not guilty to the charges.

{¶11} On August 7, 2018, the State filed a response to Cook's motion to dismiss and his suppression motion, arguing that Cook's "religious" beliefs were not sincerely held and that, in any event, there was a compelling government interest in criminalizing the manufacture and possession of Psilocyn. The State supplemented its response on September 28, 2018.

{¶12} A hearing was held on the suppression motion/motion to dismiss on August 15, 2018, August 27, 2018, and October 1, 2018. After the hearing concluded, the matter was submitted to the trial court for a decision.

{¶13} On January 16, 2019, the trial court filed a thorough written decision denying Cook's motions. (Doc. No. 360.) The trial court found that there was absolutely no basis for dismissal of the indictment as it was not defective. The trial court then proceeded to analyze Cook's religious freedom arguments related to suppression of the evidence, finding that Cook's "beliefs as to his consumption of psychedelic mushrooms [wa]s an attempt to justify his otherwise illegal actions." (Doc. No. 36).

{¶14} The trial court determined that while Cook's faith may have been sincere, "the right to the free exercise of religious practices must give way to legitimate state regulatory interests." (*Id.*) The trial court found that the regulatory interests of the state outweighed Cook's interest in "heighten[ing] his abilities to introspect and reach deeper insights." (*Id.*) The trial court reasoned that psilocybin mushrooms have dangerous properties and as a Schedule I controlled substance they had no medical value. In addition, the trial court found that other religious sects have practiced other forms of "less self-destructive behavior such as prayer or meditation in an effort to reach enlightenment." (*Id.*)

{¶15} After his initial suppression motion and motion to dismiss were denied, Cook filed a second suppression motion/motion to dismiss, citing federal authority related to the "Religious Land Use and Institutionalized Persons Act of 2000", 42 USC 2000cc-1(a)(1)-(3). The trial court conducted a brief hearing on the motion on June 24, 2019, finding that the newly cited authority was wholly irrelevant to this matter and did not merit suppression.

{¶16} On July 12, 2019, Cook filed yet another *pro se* motion to suppress, rehashing arguments he had made previously. On July 15, 2019, the state filed a memorandum in response.

{¶17} On July 15, 2019, a hearing was held. At the inception of the hearing, the trial court found that Cook's newest suppression motion was untimely, that it

was improperly filed since Cook was represented by counsel and he did not present it through counsel, and that the motion was merely a retread of prior arguments.

{¶18} Subsequently the parties indicated to the trial court that they had reached a plea agreement wherein Cook would plead no contest to all of the charges in the indictment and in exchange the state would agree that the Illegal Manufacturing and Aggravated Possession of Psilocyn charges were allied offenses of similar import, that they merged for the purposes of sentencing, and that the state would elect to proceed to sentencing on the *lower*, third degree felony of Aggravated Possession. The state also agreed to recommend a twenty-four month prison term. The agreement was reduced to writing, and was signed by the parties and the trial court.

{¶19} The trial court conducted a Crim.R. 11 colloquy with Cook, wherein Cook entered no contest pleas pursuant to the plea agreement. After questioning Cook, the trial court found that Cook's pleas were knowing, voluntary, and intelligent. The trial court accepted Cook's pleas and found him guilty.

{¶20} The matter proceeded directly to sentencing. The trial court found that the Illegal Manufacturing and the Aggravated Possession charges merged for purposes of sentencing, the state elected to proceed on the Aggravated Possession charge, and Cook was sentenced to serve twenty-four months in prison on that third degree felony. Cook was ordered to serve eleven months in prison on the Possession

of Marijuana conviction, concurrent with his other prison term. The trial court also imposed the mandatory minimum fine of $5,000 for the Aggravated Possession charge; however, Cook requested that the fine be waived and the trial court stated that it would consider a written motion on the matter.

{¶21} On July 16, 2019, Cook filed a written motion to waive the mandatory fine pursuant to R.C. 2929.18(B)(1), arguing that he was indigent.

{¶22} On July 16, 2019, the trial court filed an order granting Cook's motion to waive the mandatory fine. (Doc. No. 64).

{¶23} On July 24, 2019, the trial court filed its judgment entry memorializing Cook's convictions and sentence. However, in the entry, the trial court stated that Cook would be assessed the mandatory fine of $5,000 despite the trial court's prior contrary order. Cook now brings this appeal, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Because the trial court erred in finding that the State's interest in regulating Appellant's use of controlled substances outweighed Appellant's right to the free exercise of his religion, the trial court erred in denying Appellant's Motion to Suppress, in violation of Article I, Sections 7 and 14 of the Ohio Constitution and the First and Fourteenth Amendments to the United States Constitution.**

**Assignment of Error No. 2**
**Because the trial court did not properly weigh Appellant's indigency in determining whether to waive the mandatory fine imposed under R.C. 2929.18(B)(1), Appellant's sentence was not supported by the record.**

*First Assignment of Error*

**{¶24}** In his first assignment of error, Cook argues that the trial court erred by denying his suppression motion(s). Specifically, he contends that he had sincere religious beliefs, that the use of Psilocyn mushrooms and marijuana were central to his religious practices, and that the State's restriction of the use of these substances "encroached" on his religious beliefs. (Appt.'s Br. at 12).

Standard of Review

**{¶25}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8 citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

Analysis

**{¶26}** The United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" Section 7, Article I of the Ohio Constitution provides that "[a]ll men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience."

**{¶27}** The Supreme Court of Ohio has determined that the Ohio Constitution's Free Exercise Clause "goes beyond that provided by the federal Constitution's Free Exercise Clause." *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, ¶ 84, citing *Humphrey v. Lane*, 89 Ohio St.3d 62, 67, 2000-Ohio-435. The Supreme Court of Ohio has held that pursuant to Section 7, Article I of the Ohio Constitution, "the standard for reviewing a generally applicable, religion-neutral state regulation that allegedly violates a person's right to free exercise of religion is whether the regulation serves a compelling state interest and is the least restrictive means of furthering that interest." *Humphrey* at syllabus.

**{¶28}** Before we determine whether a regulation serves a compelling state interest through the least restrictive means, a defendant must establish a prima facie free exercise claim. In order to "state a prima facie free exercise claim, the [defendant] must show that his religious beliefs are truly held and that the governmental enactment has a coercive affect against him in his practice of his

religion." *Humphrey* at 68, citing State v. *Whisner*, 47 Ohio St.2d 181, 200 (1976). If the defendant makes this prima facie showing, then the burden shifts to the State to prove that the regulation furthers a compelling state interest. *Id*. at 69. Once that "aspect has been satisfied, the state must prove that its regulation is the least restrictive means available of furthering that state interest." *Id*.

{¶29} In this case, the trial court held a suppression hearing over multiple dates wherein Cook presented his free exercise claim. At the hearing, Cook testified regarding his "religious" beliefs. He stated that his religion was "Shamanism." (Tr. at 10). He then described Shamanism's main purpose as "spiritual healing" starting with the "self." (*Id*. at 11). "The whole purpose is a sole journey to [] discover who you really are." (*Id*.) Cook indicated that *his* purpose in Shamanism was to rid himself of all his negative energy and heal himself so he could make himself a better person to make the world a better place. (*Id*.) Cook testified that he studied the Bible, the Quran, and the Torah, and many other religious texts.

{¶30} Cook testified that he began practicing Shamanism at seventeen when he "met God" on a bad LSD "trip" and God set the path before him. Cook was thirty-six at the time of the hearing. He testified that he attempted to share his beliefs through Facebook primarily. He also indicated that he had become a minister through an online process.

{¶31} When asked if he had a "worship service," Cook testified that it was a "personal" service wherein he would take mushrooms and meditate "on basically everything." (*Id*.) He indicated that he wanted to "bring out all the things that don't need to be there that are interfering with [his] life, that way once [he is] free of those [he] can live in line of God[.]" (*Id*.)

{¶32} Cook further clarified, stating that he had studied every form of religion "to fully understand what it means to love, to serve, to honor, to respect, to not judge people[.]" (Tr. at 12). He stated that he modeled himself after Jesus, Buddha, Krishna, and all forms of religions. Cook testified that his ancestors were Shamans, though he admitted he was raised Catholic. He stated that his religion was not just an "every Sunday thing" it was a "24-hour thing." (*Id*. at 13).

{¶33} Nevertheless, Cook stated that he would hold an "observance" once a week for Jesus and all the other masters that had come before him. At that time, a Saturday night or Sunday, he would take four grams of mushrooms and "smoke a joint" to intensify and open his mind. He indicated that on Easter he would take the mushrooms and watch Passion of the Christ.

{¶34} Cook testified that he practiced at home with nobody around while others were sleeping. He testified that he did not distribute any drugs, and that he was currently the only member of the church that he wants to build. Cook stated that Christmas, Easter, the solstices and full moons were holidays to him.

{¶35} As to the mushrooms and marijuana specifically, Cook stated that he used them to reach a higher state of consciousness and to "break [him]self free of old patterns and behaviors." (Tr. at 19). He testified that the hallucinogens heal him by communicating with God. He also indicated that he smoked marijuana daily because it helped keep his mood stable and it focused his manic states.

{¶36} Cook admitted that he was listed as the CEO for a company he started called "Limitless Existence." He stated that "Limitless Existence" would be a gourmet mushroom company, but not for psychedelics.

{¶37} The trial court pressed Cook regarding his beliefs, stating that his use of the hallucinogens sounded more like a rehabilitation practice than a religion, but Cook stated that healing was the purpose of Shamanism. The trial court also pressed cook stating that other religions achieved enlightenment without hallucinogens. Cook responded by stating that he was a "narcissistic sociopath with psychotic behavior and mood swings." (Tr. at 50). Cook testified that he needed the hallucinogens to slow down his mind.

{¶38} Additional testimony was presented at the suppression hearings from various officers. Some indicated that Cook spoke during the search of his house regarding using the mushrooms for religious purposes. One officer testified that he searched for Cook on a database of registered ministers but did not find him.

{¶39} Following the hearing, the trial court summarized and analyzed the evidence presented in its entry on the matter. As to Cook's arguments regarding marijuana being religiously protected, the trial court began by noting that case authority did not support Cook's claim that marijuana was religiously protected and the trial court declined to extend the law.

{¶40} Regarding Cook's claims related to mushrooms, the trial court began by analyzing whether Cook could state a prima facie free exercise claim by establishing that his religious beliefs were truly held and whether the governmental enactment had a coercive affect against him in his religious practice. The trial court found that Cook's beliefs, while "outside the religious mainstream", were sincerely held. Nevertheless, the trial court found that other religious sects had practiced less self-destructive behavior to reach enlightenment. Thus it would seem that while the trial court found that Cook's beliefs were sincerely held, there may not have been a coercive impact on his religious practice. Regardless, the trial court found that there was a compelling government interest in regulating the drugs at issue and that on balance, the regulatory interest of the state outweighed Cook's, particularly given the drug's status as a Schedule I controlled substance.

{¶41} To determine the "sincerity" of a defendant's religious beliefs, the test is "whether a given belief * * * occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God[.]" *United States v. Seeger*, 380 U.S.

163, 166, 85 S.Ct. 850 (1965). It is more than a personal or philosophical belief. Cook's beliefs would seem to fall under a personal belief system and his use of hallucinogens and involvement with mushrooms did seem more for rehabilitation than religion. In addition, we agree with the trial court's statement that meditation or prayer might be other options for him to practice, thus the law regarding psychedelic mushrooms would not actually be restricting Cook's beliefs. However, despite our reservations, we will defer to the trial court's finding that Cook's beliefs were sincerely held given the trial court's opportunity to interact with him on numerous occasions.

{¶42} Even assuming that Cook's "religious" beliefs are sincerely held, and even assuming that the law restricts his practice, there is certainly a compelling state interest in regulating the use of Schedule I controlled substances. Moreover, the drug laws are facially religion-neutral, and do not target any specific sect of any religion. Thus we find that they are narrowly tailored. *See Trujillo v. Wyoming*, 2 P.3d 567, 577 (2000) (finding that neutral drug law of general applicability did not violate religious beliefs regarding use of mushrooms). For these reasons we cannot find that the trial court erred in overruling Cook's suppression motions.

{¶43} To the extent that Cook argues in his brief that his drug possession should be religiously protected under the federal constitution, we have already analyzed the matter under the more stringent state standard. Therefore the result

would be the same and any arguments under the federal constitution are not well-taken.[3] For all of these reasons, Cook's first assignment of error is overruled.

*Second Assignment of Error*

{¶44} In Cook's second assignment of error, he argues that the trial court erred by declining to waive a mandatory fine in this matter.

{¶45} Revised Code 2929.18(B)(1) provides authority for a trial court to waive a mandatory fine. It reads as follows.

> **(B)(1) For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.**

{¶46} In this case, at the sentencing hearing, Cook requested that the mandatory $5,000 fine be waived for his Aggravated Possession conviction. The trial court stated that it would consider a written motion if one was filed, but at the time of the sentencing hearing a written motion had not been filed so the trial court imposed the fine.

---

[3] In addition, we find, as the trial court did, that any arguments based on the Religious Freedom Restoration Act of 1993 are unavailing here. Notably, perhaps accepting this, Cook does not make any RFRA arguments on appeal as he did to the trial court.

{¶47} The day after the sentencing hearing, prior to a judgment entry being filed, Cook filed a written request to have his fine waived pursuant to R.C. 2929.18(B)(1). He alleged that he was indigent.

{¶48} The very next day the trial court filed an "ORDER" stating "After review and upon due consideration this Court finds said Motion to Waive Mandatory Fine to be well-taken and therefore grants the same." (Doc. No. 64).

{¶49} Despite granting Cook's request, the trial court's final judgment entry, which was filed just over a week later, imposed the $5,000 fine on Cook. The trial court has thus issued inconsistent judgments on the matter. It is unclear if the trial court reconsidered its prior order, or if the inclusion of the fine in the judgment entry was oversight. Therefore we reverse this matter *for the limited purpose* of the trial court clarifying whether a fine should actually be imposed as part of the sentence in this case. Accordingly, Cook's second assignment of error is sustained.

*Conclusion*

{¶50} For the foregoing reasons the judgment of the Hancock County Common Pleas Court is affirmed in part, and reversed in part. This cause is remanded to the trial court for limited further proceedings consistent with this opinion.

***Judgment Affirmed in Part
Reversed in Part, and
Cause Remanded***

**PRESTON and ZIMMERMAN, J.J., concur.**